## George W. Watterston *v.* Wm. T. Bennett et als.

The Congress of the United States, by the Act passed 29th August, 1842, declared all the entries of lands made in the Greensburg Land District to be null, on account of the errors and imperfections of the public surveys, or of conflicting claims, and authorized the return of the purchase money, on returning the certificates, and ordered a re-survey of the District; and that, when the re-survey should be confirmed, the public lands (unreserved) therein specified shall be subject to the laws for the disposal of the public lands, with this proviso : Provided, that purchasers aforesaid may retain their certificates of purchase, and the surveys of said tracts shall be corrected; and when said surveys are corrected, may receive their patents from the United States for the lands so purchased by them.

Where no attention has been called to the bills of exception filed, they will be considered as waived, when the case comes before this Court.

APPEAL from the District Court of the Parish of Livingston, *Martin*, J. Labauve, J. This is a petitory action, in which plaintiff claims of the defendant a tract of land described as lots numbers 5 and 6, of section No. 3, in township No. 5 south, range 7 east, containing 269 50-100 acres, less 50 acres taken from the south-east corner of said tract. He also claims an additional quantity of 22 12-100 acres, being an excess lately entered and purchased by him. He also asks for a partition, and that 241 62-100 acres be assigned to him, and 50 acres to said Bennett.

W. T. Bennett answered by a general denial. He further said that he was in possession and owner of a tract of land, on which he resided, in the Parish of Livingston, containing 299 5-100 acres, more or less; but it is not the same claimed by plaintiff, which tract of land he holds by titles from and under Duncan N. Hennen, Esq., who is bound to guarranty and defend him in the titles, and pay him for the loss; he calls his vendor Hennen in warranty, and, in case of eviction, claims $3,000 damages ; avers that he has made valuable improvements to the value of $2,000, of the land.

Duncan N. Hennen, to the call in warranty, answered by a general denial of the allegations contained in plaintiff's petition. He admitted that he had sold the land to the defendant for $362 55, and that defendant's title thereto is good and valid in law. He further answered, by an amendment, that the lands in Bennett's possession are not the same as described in plaintiff's petition; and if it be, in whole or in part, that there is an outstanding title in a third person, to wit : in the United States, which title is superior to that of plaintiff, and which he pleads specially.

The plaintiff, George W. Watterston, in an amended petition allowed by the Court, stated that the lands purchased by F. W. Lea, in June, about 27th, 1836, were described as lot No. 2 of section No. 2, and lots No. 5 and 6 of section No. 3, in township No. 5, south of range No. 7 east; and that, by another survey made by the Government, the said lands are now designated as the south-west fractional, west of Tangipaho river, of section No. 2, and the fractional south half of section No. 3, in said township No. 5, north of range 7 east, for which a patent has issued; but, that it is the same land under different designation.

Pierre A. Hebrard intervened in this suit, alleging that the New Orleans and Nashville Railroad Company, about the 17th January, 1837, caused to be laid out a town, called by the name of Uncle Sam, on the following described property, to wit : Lot No. 2 of section No. 2, and lots No. 5 and 6 of section No. 3, in township No. 5 of south of range 7 east, in the Greensburg District, which said lands were divided into squares, intersected by streets, and having therein public squares, parks, cemeteries and other public places, as common property for the use of all persons, and which public places were, by a plan, dedicated to the public use forever. He further avers that, at the sale of said property, he purchased the square No. 243, situated between Hoffman and Bredlove avenues, more fully described in the annexed deed of sale; and that said G. W. Watterston, plaintiff in said case, is claiming possession of said property as owner thereof, to the prejudice of petitioner and of the public. He prays to intervene, and that plaintiff's petition be dismissed.

Also, intervened Mrs. Catherine A. Lea, executrix of Franklin W. Lea, alleging, in substance, that, in her said capacity, she is holder of certificate marked A, signed by John Killian, Register of the Land Office at St. Helena, now Greensburg, Louisiana, dated about 12th July, 1836, and numbered 709, whereby it appears that, on the 27th June, 1836, Franklin W. Lea deposited $362 83, with a view to purchase the following described lands, to wit : lot No. 2 of section 2, and lots 5 and 6 of section 3, in township 5 south range 7 east, in the Greensburg, of St. Helena aforesaid ; that in consequence of a want of authority on the part of the Land Office at Greensburg, and other irregularities and informalities, the United States refused to issue patents for said lands, but authorized the holders of certificates, of which, as above stated, petitioner was and is owner, to demand and receive the money originally deposited; that afterwards, by law, the United States authorized the re-survey of said lands, and authorized the holders of said certificates, if they thought proper to do so, to hold on to said certificates, and to demand for them the lands which, upon said survey, might correspond in description with the lands originally applied for; that, in pursuance of these laws, she desired to receive back the money, and that, pending the proceeding, George W. Watterston claimed to be the assignee of F. W. Lea, and as such, that he had the right to elect to receive the corresponding lands in designation under the re-survey, and to make the entry for the excess upon such re-survey; that said Watterston has no right, as assignee of Lea, to make such entry, nor has he any right to demand a patent; that, if a patent has issued, it was unauthorized by law, and ought to be delivered up and cancelled. She prays to intervene, and to be decreed the owner of said certificate, and that, if any patent be produced, it be delivered up to the Clerk of this Court, to be cancelled, as issued without authority of law.

Upon these pleadings the parties went into trial; verdict and judgment were rendered against the plaintiff, and he took this appeal.

The evidence shows:

That Franklin W. Lea, by certificate No. 709, issued at the Land Office, St. Helena, by John Killian, Register, dated July 12th, 1836, purchased of said Register lot No. 2 of section No. 2, and lots 5 and 6 of section No. 3 of township No. 5, south of range 7 east, containing 290 31-100 acres, at the rate of one dollar and twenty-five cents per acre.

That, by act of sale, passed on the second day of September, 1836, said Franklin W. Lea sold, with full warranty, to the New Orleans and Nashville Rail Road Company, the following described tracts of land:

1. The south half of a certain section of land situated in the Parish of St. Helena, on the west bank of the Tangipaho River, bounded on the north by lands until lately owned by Machael Flein, on the south by lands lately owned by Franklin W. Lea, and on the east of said river Tangipaho, known as section No. 43, and confirmed to Reuben Bearers, containing 637 47-100 acres, which said half section is to be taken and laid off from the south or lower side of said section, and to contain 318 50-100 acres more or less.

2. Lots Nos. 1, 2, 3, of section No. 34, township No. 4, south of range 7 east; and lots Nos. 5 and 6 of section No. 3, township No. 5 south, range 7 east, according to the maps of the Surveyor General, and deposited in the Land Office in the Parish of St. Helena.

That the said New Orleans and Nashville Rail Road Company, some time in January, 1837, laid out a town named Uncle Sam, and sold lots and squares to divers persons; in these acts of sale they described the town as follows: The said town of Uncle Sam, whereof the property herein conveyed forms part, is made up and composed of several tracts or parcels of land which the said New Orleans and Nashville Rail Road Company acquired by purchase, in part from Franklin W. Lea, by act of sale passed before Lyman Briggs, Parish Judge, on the 2d September, 1836, and in part from George Richardson; said town lying and being partly in the Parish of St. Helena, and partly in the Parish of Livingston, in this State.

That on the 27th January, 1837, the said company sold, by public act, to Pierre A. Hébrard, intervenor, the square of ground designated on the plan of said town by No. 243, containing twelve lots.

The Congress of the United States, by the Act passed 29th August, 1842, declared all the entries of lands made in the Greensburg Land District, to be null, on account of *the* errors and imperfections of the public surveys, or to conflicting claims, and authorized the return of the purchase money on returning the certificates, and ordered a re-survey of the district, and that, when the re-survey should be confirmed, the public lands (unreserved) therein specified shall be subject to the laws for the disposal of the public lands, with this proviso: "Provided that purchasers aforesaid may retain their certificates of purchase, and the surveys of said tracts shall be corrected, and when said surveys are corrected,

may receive their patents from the United States for the lands so pur-- chased by them."

That the re-survey contemplated by this law was made, and was duly approved on the 5th August, 1845.

That the said plaintiff purchased the lots Nos. 5 and 6, described in his petition, on the 5th May, 1855, at Sheriff's sale made to satisfy a judg- ment rendered in the suit of *Hugh M. Dowlin* v. *The New Orleans and Nashville Rail Road Company*, in the Fifth District Court of New Orleans.

That a patent issued, on the 2d April, 1858, comprising said lands, to Franklin W. Lea and to his heirs, under the following description: "For thr_e certain tracts of land originally designated as lot No. 2 of section 2, and lots Nos. 5 and 6 of section 3, in township 5 south, of range 7 east; but which lands, by the re-survey thereof, authorized by the Act of 29th August, 1842, appear, by the plat of re-survey, approved 5th August, 1845, as the south-west fractional lying west of Tangipaho River, of section 2; and the south fractional half of section 3, in township 5, south of range 7 east, containing 312 43-100 acres."

That the defendant, Terrell Bennett, holds the lands under a title of the following tenor and no other:

"I hereby acknowledge to have received from Mr. W. Terrell Bennett, the sum of three hundred and sixty two dollars and fifty-five cents, on the first day of July, 1854, in payment of the following lots, viz: Lot No. 2 of section 2, and lots 5 and 6 of section 3, of township 5, south of range 7 east, Greensburg District; and I agree to give him a notarial title at any time he may desire it, at his expense.

(Signed)            DUNCAN N. HENNEN."

It is clear, from the preceding statement, that there is no difficulty about the locus in quo. There are several bills of exception, but, as our attention has not been called to any of them, we have considered they have been waived; besides, we are satisfied that a decision upon them would not have changed the final result upon the merits.

It is contended that the patent issued illegally; that it is null and void, and should be delivered up and cancelled, and that Mrs. Lea is entitled to claim and receive the purchase money back.

It appears that the said patent issued advisedly, and that it was forwarded from the General Land Office at Washington to the Land Office at Greensburg, to be delivered to the party entitled to it. The following is an extract from a letter of the Commissioner addressed to the plaintiff:

General Land Office, August 23d, 1859.  *  *  *  *  *  With respect to Greensburg Patent No. 709, to which you called attention, I have to state that, in view of the protest against its delivery, filed by Duncan N. Hennen, executor of Franklin W. Lea, deceased, the patentee, it is not deemed advisable to coerce the Register to *deliver* it to you as *assignee*, inasmuch as he is officially responsible for its delivery, upon evidence

satisfactory to him ; he has, therefore, been directed to deliver it to the Clerk of the Court having charge of the case, with a view to its ultimate delivery by said Clerk to the party whom it may determine to be the one entitled to receive it.

(Signed)     Jos. S. WILSON,
Acting Commissioner.

The following is another extract of a letter addressed by said Commissioner of the General Land Office at Washington to the Register of Land Office at Greensburg, Louisiana :

GENERAL LAND OFFICE, December 14, 1858.

Sir :  Greensburg Patent, No. 709, dated 2d April, 1858, in favor of Franklin W. Lea, for (here the lands are described as patented) was, per letter of the 8th of said month, transmitted to your office for the purpose of being .delivered to the person entitled to receive the same. It is represented to this office by George W. Watterston, Esq., that he is the owner, by purchase under Lea, of the land embraced in said patent, originally designated as lots Nos. 5 and 6 of section 3, and that with a view to perfect his title, it becomes a matter of importance to him to have the Patent passed out of your custody, which he has been unable to effect in consequence of his not holding the receiver's duplicate receipt of the corresponding number.

It is understood that the said duplicate receipt is in the possession of Duncan N. Hennen, Esq., of New Orleans, executor of the estate of F. W. Lea, and that he, Hennen, declines surrendering the same or receiving the patent; under these circumstances, I have to request that you will require Mr. Watterston to file an affidavit setting forth the facts of his interest in the land, and that he is unable to procure the duplicate receipt alluded to, at the same time producing the evidence of his title, and if you are satisfied therefrom, that he is legally interested in the land, you will, after serving a proper notice to Mr. Hennen, deliver the patent to the·former, unless valid cause should then be shown why this should not be done, and taking from him a receipt therefor, and advising this office of the facts of its having been so delivered."

(Signed)     THOS. HENDRICK, Commissioner.

It is evident that the Commissioner of the General Land Office, was well aware of the contest and suit between these parties, and that he considered the patent as having legally issued, and as belonging to F. W. Lea's assignees.

The patent for land is absolute and final on its face, and the United States are divested of all the lands comprised in it, and which now are private property owned by individuals, and we have to decide who is the just and real owner of the same.   The moment this patent for the lands therein comprised, passed this great seal, it was beyond the power of the officers of the United States.  *Lott* v. *Prudhomme*, 3 R. 293.  The lands so patented were vested in F. W. Lea's vendees.

Whatever name may have been inserted in the certificate confirming a Spanish grant, confirmation must enure to the benefit of the real owner. *Terrell* v. *Porche*, 2 A. 148. So this patent, although granted in favor of F. W. Lea, was really in favor of his vendees, and enured to their benefit. *McGill* v. *McGill*, 4 A. 268.

We have disposed of the alleged title in the United States to the lands in dispute, now owned by the assignees of Franklin W. Lea, under the patent. It is contended that the plaintiff acquired no land at the Sheriff's sale referred to, made 5th May, 1855; that the New Orleans and Nashville Rail Road Company had already disposed of the lands pretended to be seized, in laying out the town called Uncle Sam, and in selling all the lands in squares, lots, etc., in the year 1837. These purchasers are not parties in this suit, except Pierre A. Hébrard, the intervenor; but their titles are urged to show that the plaintiff has no title, and that the titles of these purchasers coming from the same author, and being older, are superior. This position is very strong, but it is very uncertain where and on what lands this pretended town Uncle Sam was laid out; no one ever knew a town there. It must be remembered that Franklin W. Lea sold a quantity of land to the said company, besides the lots Nos. 5 and 6 sold to plaintiff by the Sheriff. The said company had also purchased other lands from George Richardson. Plaintiff shows a complete title to the lands described in his petition and covered by the patent; nothing in the record shows that the lands laid out for the said town formed any part of the lands in dispute.

It is therefore ordered, adjudged and decreed, that the verdict of the jury and the judgment of the Court be annulled, avoided and reversed. It is further ordered and decreed, that the representatives of George W. Watterston be recognized as the legal owners of the lands described in the petition and survey made by order of Court in this case, by Theodore Gillespie, on or about 26th October, 1858, and in the patent No. 759, issued in favor of Franklin W. Lea, on 2d April, 1858, less 50 acres taken from the south-east corner of said tract. It is further ordered and decreed, that the intervention of Pierre A. Hébrard be dismissed as in case of nonsuit, and that he pay the incidental costs.

It is further ordered and decreed, that the question of improvements and rents between the plaintiff and the defendant, and the question as to all claims in warranty between the defendant and his vendor, Hennen, be remanded to be adjusted and determined according to law. It is further adjudged and decreed, that the defendant, W. T. Bennett, pay costs in both Courts, and he have judgment for the same against his warrantor, Duncan N. Hennen.