## FLORIDA CENTRAL AND PENINSULAR RAILROAD COMPANY v. BELL.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 95.  Argued and submitted December 22, 1899.—Decided February 26, 1900.

As the plaintiffs in the Circuit Court claimed in their declaration that the controversy was one that turned on the construction of the laws of the United States, and as both courts below dealt with the case on that assumption, this court has jurisdiction to review the judgment of the Circuit Court of Appeals.

As the plaintiffs, some of whom were citizens of Florida, and some of whom were citizens of Texas, elected to assert a joint claim to land in Florida in dispute in this case, which was commenced before the Circuit Court of the United States for the Southern District of Florida, and carried by appeal to the United States Circuit Court of Appeals for the Fifth Circuit, and as they recovered a joint judgment for their undivided interests therein, and as the plaintiffs' declaration disclosed no Federal question, the principles settled in the cases cited by the court in its opinion apply, and compel a dismissal of the suit for want of jurisdiction in the Circuit Court.

In the Circuit Court of the United States for the Southern District of Florida, William J. Bell, John W. Bell, Frank A. Bell, citizens of the State of Texas; E. A. Bell, Matilda P. Feihe, all heirs of and children of Louis Bell, deceased, late of Hillsborough County, State of Florida; and George A. Bell and Simon Bell, heirs of and grandchildren of said Louis Bell; and Anton Feihe, husband of said Matilda P. Feihe, brought an action of ejectment against the Florida Central and Peninsular Railroad Company, a corporation of the State of Florida, seeking to recover possession of about seven acres of land in Hillsborough County, Florida, alleged to be of the value of thirty thousand dollars, and damages in the sum of ten thousand dollars. The declaration alleged that the land in controversy was occupied by defendant as its roadbed and right of way, and that the plaintiffs claimed title to said land under and by virtue of a patent granted by the United States

to said Louis Bell and his heirs upon a preëmption claim filed
in the local land office of the United States in 1883, and upon
appeal to the general land office, and upon and from an
appeal from the decision of the Commissioner of the general
land office to the Secretary of the Interior of the said United
States, when by the order of the said Secretary the said patent
was granted. The declaration further alleged that, in the pro-
ceedings in the land department, the defendant claimed and
contended that the plaintiffs were not, under any of the laws
of the United States, entitled to have a patent to said land
granted to said Louis Bell and his heirs, and that the defend-
ant, at the time of the commencement of this suit, claimed
and insisted that the plaintiffs derived no title to said land
under and by virtue of the said patent, and at the same time
claimed that under the laws of the United States, and espe-
cially under and by virtue of the first section of an act of
Congress entitled "An act granting public lands in alternate
sections to the States of Florida and Alabama to aid in the
construction of certain railroads in said States," approved
May 17, 1856, c. 31, 11 Stat. 15, it was entitled and had the
right to locate the route of its railroad and construct the same
through the said lands, and to be in possession thereof, on the
ground, among other grounds, that the said land was a part
of that tract of land, which constituted at one time a military
reservation, known as the Fort Brook Military Reservation at
Tampa, State of Florida. And the plaintiffs further alleged
in their declaration that after the passage of an act of Con-
gress entitled "An act to provide for the disposal of aban-
doned and useless military reservations," approved July 5,
1885 [1884? See 23 Stat. 103], they contended for and claimed
title and a patent to said parcel of land, under and by virtue
of the first proviso of the second section of the last-mentioned
act of Congress, both in the office of the said General Land
Office and of the Secretary of the Interior, and that the
defendant appeared in both of the said offices, by its counsel,
and there claimed and contended, and at the commencement
of this suit claimed and contended, that plaintiffs were not
entitled to a patent or title to said parcel of land under the

said proviso of said act of Congress, and, at the times aforesaid, claimed and insisted that it was entitled to locate the route of its railroad through said parcel of land and to be in possession thereof under and by virtue of the third proviso of the aforesaid act of Congress approved May 17, 1856.

This declaration was filed on December 29, 1896, and on January 4, 1897, the defendant appeared and filed a plea of not guilty.

On February 4, 1897, the defendant, after notice to the plaintiffs, asked leave to file further and special pleas, denying that the court had jurisdiction of the action, denying that the defendant claimed title under the act of May 17, 1856, or under any other act of Congress or law of the United States, and alleging the pendency of a prior suit in equity between the same parties in the Circuit Court of the United States and also the pendency in the Circuit Court of the sixth judicial circuit of the State of Florida, of a petition and proceeding by the defendant to condemn the land in dispute under its right of eminent domain under the laws of the State of Florida.

Thereafter, on February 18, 1897, the court made the following order:

"This cause coming on to be heard upon the motion of the defendant for leave to file additional pleas and upon the motion of the plaintiffs to transfer the cause to Tampa for trial, and it having been fully heard and considered, and it appearing that none of said pleas constitute a good defence to said action that could not as well be shown under the general plea of not guilty, it is ordered that said motion to file additional pleas be denied, and that the order to transfer the cause for trial be granted, and that this order be without prejudice to any motion for a stay of an enforcement possession under any judgment which may be recovered on account of condemnation proceedings."

On February 10, 1897, the defendant moved for a continuance, which motion was on February 18 denied.

On March 5, 1897, the defendant moved the court to "dismiss the cause, for the reason that there is nothing on the face

of the declaration to show that this court has jurisdiction to hear and determine the said cause."

On March 11, 1897, after a consideration of this motion to dismiss, it was ordered in open court that said motion be dismissed. On the same day, an agreement, signed by the attorneys of the respective parties, to waive a jury and that the cause might be tried by the court, was filed.

The cause was so proceeded in that on March 23, 1897, the court found that the plaintiffs were entitled to possession and have a fee simple title in and to the land in dispute, and assessed their damages in loss of rent and profit in the sum of nineteen hundred and fifty-five dollars, and entered a judgment as follows :

"It is considered by the court that the plaintiffs herein, William J. Bell, John W. Bell, Frank A. Bell, Eliza A. Bell and Matilda P. Feihe, and George A. Bell and Simon Bell, do receive and recover from the defendant, the Florida Central and Peninsular Railroad Company, the sum of nineteen hundred and fifty-five dollars, as well as for costs in this behalf; and it is further considered that said plaintiffs have a fee simple title in and to the lands and premises described as follows, to-wit," etc. ·

On April 10, 1897, the defendant moved the court for a writ of error and a citation to review the judgment in said cause, returnable to the United States Circuit Court of Appeals, and for a supersedeas of the said judgment upon filing a bond. On the same day the writ of error was allowed, and it was ordered that, on the defendant filing a bond with sufficient sureties in the sum of thirty-five hundred dollars, to be approved by the court or by the clerk thereof, the said writ should operate as a supersedeas of the judgment in said cause. A bond was approved and filed accordingly.

On May 24, 1898, the Circuit Court of Appeals affirmed the judgment of the Circuit Court.   59 U. S. App. 189.

And thereupon, on June 2, 1898, a writ of error from this court was allowed.

*Mr. J. C. Cooper* for plaintiff in error.   *Mr. J. A. Hender-*

*son* was on his brief. *Mr. William Wirt Howe* also filed a brief for same.

*Mr. H. Bisbee* for defendants in error submitted on his brief.

: MR. JUSTICE SHIRAS, after making the above statement, delivered the opinion of the court.

Our first inquiry is whether this court has jurisdiction to review the judgment of the Circuit Court of Appeals. The writ of error in this case was brought under section six of the judiciary act of March 3, 1891. If the judgment of the Circuit Court of Appeals was final, under that section, this writ of error must be dismissed. In order to maintain our jurisdiction it must appear that the jurisdiction of the Circuit Court was not dependent solely upon the opposite parties being citizens of different States. *Colorado Central Mining Co.* v. *Turck,* 150 U. S. 138; *Press Publishing Co.* v. *Monroe,* 164 U. S. 105.

This question must be answered upon an inspection of the declaration of the plaintiffs in the Circuit Court. Does it disclose that the plaintiffs invoked the jurisdiction of that court because the parties were citizens of different States, or because the case was alleged to be one arising under the Constitution, laws or treaties of the United States?

The action was in ejectment to recover possession of a tract of land in Hillsborough County, State of Florida. The plaintiffs were eight in number, three of whom were alleged to be citizens of the State of Texas, and there was no allegation as to the citizenship of the other five. The defendant, the Florida Central and Peninsular Railroad Company, was alleged to be a corporation organized and existing under the laws of Florida. Hence, upon the face of the declaration, the jurisdiction of the Circuit Court would have failed, at least as to five of the plaintiffs, if that jurisdiction depended solely on the citizenship of the parties. The declaration, however, alleges that the plaintiffs claim title to the land in dispute by virtue of a patent granted to their ancestor by the Government of the

United States; that the defendant claimed title under the first section of an act of Congress, entitled "An act granting public lands in alternate sections to the States of Florida and Alabama, to aid in the construction of certain railroads in said States," approved May 17, 1856; and further, that the defendant railroad company claimed and insisted that it was entitled to locate and maintain the route of its road through the land in question under said act of Congress.

Accordingly, it appears that the theory of the plaintiffs, in bringing their suit in the Circuit Court of the United States, was that the controversy was between a patentee of the United States and a railroad company claiming a right to occupy the land embraced in the patent by virtue of an act of Congress, and was therefore a case arising under the laws of the United States. This was the view of the judge who tried the case in the Circuit Court, as he refused to grant the defendant's motion to dismiss for want of jurisdiction, and this view was also taken by the Circuit Court of Appeals, as appears in the following passage of its opinion:

"There is no effort in this case to found the jurisdiction of the court on the diverse citizenship of the parties. There is nothing in the record to indicate that the Judge of the Circuit Court entertained jurisdiction of the case on that ground. The declaration shows that in the preëmption claim by the ancestor of the defendants in error to the land involved, the claim was stoutly resisted by the plaintiff in error in the different stages of the prosecution thereof and before the different officers of the land department. It shows that under a named act of Congress, approved May 17, 1856, the defendant claimed the right to occupy the land in question in the manner that it was occupying it, without accountability to the defendants in error. . . . So that, independently of the claim for mesne profits for the time transpiring between the preëmption entry and the issuance of the patent, it is clear that the issues made by the declaration presented a case within the jurisdiction of the Circuit Court."

As, then, the plaintiffs in the Circuit Court claimed in their declaration that the controversy was one that turned on a con-

struction of the laws of the United States, and as both the courts below dealt with the case on that assumption, it is plain that it cannot be successfully contended in this court that the judgment of the Circuit Court of Appeals was final because the jurisdiction of the Circuit Court was dependent entirely upon the opposite parties being citizens of different States.

Nor do we find merit in a second ground urged to maintain the motion to dismiss, namely, that the action was in ejectment; that the defendant admitted of record that it had no title; and that therefore the only question it could raise was one of jurisdiction. An inspection of the defendant's answer shows that, while it did disclaim title under the act of Congress, it claimed a right of possession on other grounds, with respect to which it had a right to be heard, if indeed the Circuit Court had jurisdiction.

We come to the case, then, as one in which we have a right to supervise the judgment of the Circuit Court of Appeals. And the first question, and indeed, as we read the record, the only one we have to meet, is whether the Circuit Court had jurisdiction of the case. Not having, as we have seen, jurisdiction because of a controversy between citizens of different States, did it have jurisdiction because the case was one arising under the Constitution or laws of the United States? This question was answered affirmatively in both courts below, and this because, as it seemed to them, the plaintiffs' declaration disclosed such a case.

It must be regarded as conclusively established by our decisions that the jurisdiction of the Circuit Court must appear in the plaintiffs' statement of their case.

" When the original jurisdiction of a Circuit Court of the United States is invoked upon the sole ground that the determination of the suit depends upon some question of Federal nature, it must appear, at the outset, from the declaration or bill of the party suing, that the suit is of that character; in other words, it must appear in that class of cases that the suit is one of which the Circuit Court, at the time its jurisdiction is invoked, could properly take cognizance. If it does not so appear, then the court, upon demurrer or motion, or upon

its own inspection of the pleadings, must dismiss the suit, just as it would remand to the state court a suit which the record, at the time of removal, failed to show was within the jurisdiction of the Circuit Court. It cannot retain it in order to see whether the defendant may not raise some question of a Federal nature upon which the right of recovery will finally depend; and if so retained, the want of jurisdiction, at the commencement of the suit, is not cured by an answer or plea which may suggest a question of that kind." *Metcalf* v. *Watertown*, 128 U. S. 588; *Colorado Central Mining Co.* v. *Turck*, 150 U. S. 138; *Oregon &c. Railway* v. *Skottowe*, 162 U. S. 490; *Hanford* v. *Davies*, 163 U. S. 273; *Press Publishing Co.* v. *Monroe*, 164 U. S. 105.

We do not, however, understand that these cases are questioned by the defendants in error, but their contention is that in the plaintiffs' declaration it did sufficiently appear that a Federal question was necessarily involved, upon the solution of which the determination of the case depended.

The paragraph of the declaration which sets forth the plaintiffs' claim is as follows:

"The plaintiffs allege that they claim title to the said land under and by virtue of a patent granted by the Government of the United States of America to the said Louis Bell and his heirs, upon a preëmption claim for said land under the laws of the United States, originally commenced and filed in the local land office of the United States of America at Gainesville, Florida, in 1883, and presented by the heirs of the said Louis Bell and his heirs, the plaintiffs, in said land office; and upon appeal in the general land office of the Government and upon and from an appeal from the decision of the commissioner of the general land office to the Secretary of the Interior of the United States, the said heirs prosecuted to the preëmption claim, until by the order and decision of the said Secretary the said patent was granted."

In view of the frequent and recent decisions of this court on this subject, it is not necessary to argue the proposition that the mere assertion of a title to land derived to the plaintiffs, under and by virtue of a patent granted by the United States, pre-

sents no question which, of itself, confers jurisdiction on a Circuit Court of the United States. *Blackburn* v. *Portland Gold Mining Co.,* 175 U. S. 571.

But it seems to be thought that, by alleging that the defendant claimed and contended, in the land department, that the plaintiffs were not entitled, under any of the laws of the United States, to have a patent granted to them, and that the defendant at the time of the commencement of this suit claimed and insisted that the plaintiffs derived no title to the said land under and by virtue of 'the said patent, and at said time claimed that, under the laws of the United States, and especially under and by virtue of the first section of an act of Congress, entitled "An act granting public lands in alternate sections to the States of Florida and Alabama, to aid in the construction of railroads in said States," approved May 17, 1856, it was entitled and had the right to locate the route of its railroad and construct the same through the said lands, and to be in possession thereof, on the ground, among other grounds, that the said section eight was a part of that tract of land which constituted at one time a military reservation known as the Fort Brooke Military Reservation, at Tampa, State of Florida, there was presented a question needing for its solution a construction of laws of the United States.

It is obvious that all that is added, by these allegations, to the plaintiffs' statement of their own claim, is a statement of what the defendant claimed before and at the time of the commencement of this suit in respect to its own title. The plaintiffs were not pretending to have title under the act of May 17, 1856, however it might be construed. That act was, under the allegations of the declaration, the source of the defendant's title, but it could not affect the plaintiffs' title unless it were pleaded and set up by the defendant. It has been several times held by this court that the plaintiff, if the statement of his own claim does not disclose a Federal question, cannot create jurisdiction in a Circuit Court by anticipating the defendant's claim, and by alleging that the defendant will set up a defence under some law of the United States.

Thus in *Tennessee* v. *Union and Planters' Bank*, 152 U. S. 454, 464, Mr. Justice Gray, after citing *Metcalf* v. *Watertown*, 128 U. S. 586, and other cases, said:

"In each of the three cases now before this court, the only right claimed by the plaintiffs is under the law of Tennessee, and they assert no right whatever under the Constitution and laws of the United States. In the first and second bills the only reference to the Constitution or laws of the United States is the suggestion that the defendants will contend that the law of the State under which the plaintiffs claim is void, because in contravention of the Constitution of the United States; and by the settled law of this court, as appears from the decisions above cited, a suggestion of one party, that the other will or may set up a claim under the Constitution or laws of the United States, does not make the suit one arising under that Constitution or those laws."

*Chappell* v. *Waterworth*, 155 U. S. 102; *East Lake Land Co.* v. *Brown*, 155 U. S. 488; *Oregon Short Line Co.* v. *Skottowe*, 162 U. S. 490.

And, even if it could be held that, by anticipating a supposed defence, a Federal question might be made to appear to be involved in the controversy, jurisdiction in the Circuit Court would fail if, on the coming in of the plea or answer, the defence would turn out to be based on matter wholly independent of the Constitution or any law of the United States, and it would be the clear duty of the court to dismiss the suit for the reason that it did not "really and substantially involve a dispute or controversy within the jurisdiction of that court."

So it was held in *Robinson* v. *Anderson*, 121 U. S. 522, 524, where an order of the Circuit Court dismissing the case was affirmed, this court saying, through Mr. Chief Justice Waite:

"Even if the complaint, standing by itself, made out a case of jurisdiction, which we do not decide, it was taken away as soon as the answers were in, because if there was jurisdiction at all it was by reason of the averments in the complaint as to what the defences against the title of the plaintiff would be, and these were of no avail as soon as the answers were filed and it was made to appear that no such defences were

relied on. The Circuit Court cannot be required to keep jurisdiction of a suit simply because the averments in a complaint or declaration make a case arising under the Constitution, laws or treaties of the United States, if, when the pleadings are all in, it appears that these averments are immaterial in determination of the matter really in dispute between the parties, and especially if, as here, they were evidently made 'for the purpose of creating a case' cognizable by the Circuit Court, when none in fact existed."

Such observations are directly applicable to the present case, for the defendant, in its plea to the jurisdiction of the court, explicitly admitted the plaintiffs' title to the land under the patent, and denied that the defendant claimed title to the land in dispute under the act of May 17, 1856, or under any other act of Congress, but placed its defence, by way of confession and avoidance, on totally different grounds than those mentioned in the declaration, and which involved no construction or application of the Constitution or laws of the United States.

It is contended, however, that, whether or not the Circuit Court had jurisdiction to determine the question of title to the land in dispute or of the right of possession thereof, the plaintiffs' demand to recover mesne profits, accruing between the preëmption entry and the issuance of the patent, presented a question within the jurisdiction of that court. It is not easy to perceive why, if the Circuit Court did not possess jurisdiction to decide the right of possession, it could have jurisdiction to pass upon the question of mesne profits, the right to recover which would depend on the right of possession.

In affirming this view of the case, the Circuit Court of Appeals cites *Durango Land & Coal Company* v. *Evans*, 49 U. S. App. 305. That was a case where the Circuit Court of Appeals of the Eighth Circuit held that the inquiry as to the right of the plaintiff to recover mesne profits, accruing while the alleged contest was depending and undetermined in the general land office, involved an examination and construction of the laws of the United States. The case was brought to this court, but was dismissed on stipulation of the

parties. The report of the case does not disclose whether there was really a controversy between the parties respecting the construction of the land laws of the United States. What really seems to have been involved, in respect to mesne profits, was whether the doctrine of relation, which is a common law doctrine, would enable the plaintiff, after having established his title, to recover the mesne profits which accrued while the plaintiff was wrongfully excluded from possession. Such a question would not seem to be a Federal one, but one incidental to the determination of the principal controversy concerning the right of possession.

At all events, there is nothing disclosed in the declaration in the present case showing that, so far as the damages and mesne profits are concerned, any Federal question was presented. If the Circuit Court had jurisdiction to determine the right of possession, and, in the exercise of that jurisdiction, decided in the plaintiffs' favor, the incidental question of the time when damages and profits would accrue to the plaintiffs would legitimately arise. But if that court had not jurisdiction to determine the controversy as to the right of possession, it could not draw to itself the jurisdiction of the case by considering what the consequences would be if the plaintiffs were permitted to recover possession.

Apart from the question of jurisdiction arising from the presence of any Federal question, can it be said that jurisdiction did attach in respect to those plaintiffs who were alleged to be citizens of Texas?

As we have seen, neither of the courts below were of that opinion. The judgment of the Circuit Court was in favor of all the plaintiffs jointly for the entire tract in dispute, and in so doing, followed the plaintiffs' claim in their declaration, wherein they claimed title to the whole tract as belonging to them jointly. They did not allege that they were tenants in common, although in the findings the court found that the respective plaintiffs held undivided interests in the land.

In *Strawbridge* v. *Curtiss*, 3 Cranch, 267, it was said: "Where the interest is joint, each of the persons concerned in that interest must be competent to sue, or liable to be sued,

in those (Circuit) Courts, but the court does not mean to give an opinion in the case where several parties represent several distinct interests, and some of those parties are, and others are not, competent to sue or liable to be sued, in the courts of the United States."

*New Orleans* v. *Winter*, 1 Wheat. 91, 94, was the case of a possessory action brought by the heirs of Elisha Winter, deceased, to recover the possession and property of certain lands in the city of New Orleans. One of the petitioners was described in the record as a citizen of the State of Kentucky, and the other as a citizen of the Territory of Mississippi. The plaintiffs recovered a judgment in the Circuit Court, but this judgment was reversed by this court, Chief Justice Marshall saying:

"Gabriel Winter, then, being a citizen of the Mississippi Territory, was incapable of maintaining a suit alone in the Circuit Court of Louisiana. Is his case mended by being associated with others who are capable of suing in that court? In the case of *Strawbridge* v. *Curtiss* it was decided that where a joint interest is prosecuted, the jurisdiction cannot be sustained, unless each individual be entitled to claim that jurisdiction. In this case it has been doubted whether the parties might elect to sue jointly or severally. However this may be, having elected to sue jointly, the court is incapable of distinguishing their case, so far as respects jurisdiction, from one in which they were compelled to unite. The Circuit Court of Louisiana, therefore, had no jurisdiction of the cause, and their judgment must, on that account, be reversed, and the petition dismissed."

In *Barney* v. *Baltimore*, 6 Wall. 280, it was held that part owners or tenants in common in real estate, of which partition is asked in equity, have an interest in the subject-matter of the suit, and in the relief sought, so intimately connected with that of their cotenants, that if these cannot be subjected to the jurisdiction of the court, the bill will be dismissed.

*Hooe* v. *Jamieson*, 166 U. S. 395, was an action of ejectment brought in the Circuit Court of the United States for the Western District of Wisconsin, by a complaint in which the plain-

tiffs alleged that they resided in and were citizens of the city
of Washington, D. C., and that defendants all resided in and
were citizens of the State of Wisconsin. Defendants moved
to dismiss the action on the ground that the Circuit Court had
no jurisdiction, as the controversy was not between citizens of
different States. The Circuit Court ordered that the action be
dismissed unless plaintiffs within five days thereafter should
so amend their complaint as to allege the necessary jurisdic-
tional facts. Plaintiffs then moved for leave to amend their
complaint by averring that three of them were when the suit
was commenced, and continued to be, citizens of the District
of Columbia, but that one of them was a citizen of the State
of Minnesota, and that each was the owner of an undivided
one fourth of the lands and premises described in the com-
plaint, and that they severally claimed damages and demanded
judgment. This motion was denied, and the action dismissed.
Plaintiffs sued out a writ of error, and the Circuit Court certi-
fied to this court these questions of jurisdiction : First. Whether
or not said complaint set forth any cause of action in which
there is a controversy between citizens of different States, so
as to give said Circuit Court jurisdiction thereof. Second.
Whether or not said complaint as so proposed to be amended
would, if so amended, set forth any cause of action in which
there is a controversy between citizens of different States so
as to give said Circuit Court jurisdiction thereof. This court
held, through Mr. Chief Justice Fuller, after reviewing the
cases, that the voluntary joinder of the parties had the same
effect for purposes of jurisdiction as if they had been com-
pelled to unite ; that as no application was made to discontinue
as to the three plaintiffs who were citizens of the District of
Columbia, and to amend the complaint and proceed with the
cause in favor of that one of the plaintiffs alleged to be a citi-
zen of Minnesota, jurisdiction as to four plaintiffs could not
be maintained on the theory that when the trial terminated
it might be retained as to one. Accordingly the judgment of
the Circuit Court was reversed.

As, then, in the present case, the plaintiffs elected to assert
a joint claim and title to the land in dispute, and recovered a

joint judgment for their undivided interests therein, and as the plaintiffs' declaration discloses no Federal question, the principles of the cited cases apply, and compel a dismissal of the suit for want of jurisdiction in the Circuit Court.

This conclusion withdraws from our consideration the errors assigned to the action of the courts below in respect to the defendant's several pleas of *lis pendens*.

> *The judgment of the Circuit Court of Appeals is reversed; the judgment of the Circuit Court is likewise reversed, and the cause is remanded to that court with directions to dismiss the action for want of jurisdiction.*