FILHIOL v. TORNEY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF ARKANSAS.

No. 252. Submitted April 25, 1904.—Decided May 16, 1904.

Where, in an ejectment action, the plaintiffs' statement of their right to the possession of the land discloses no case within the jurisdiction of the Circuit Court of the United States, that jurisdiction cannot be established by allegations as to the defence which the defendant may make or the circumstances under which he took possession.

THIS was an action of ejectment commenced in the Circuit Court of the United States for the Eastern District of Arkansas, based upon the same title which was presented in *Muse* v. *Arlington Hotel Company,* 168 U. S. 430, and *Filhiol* v. *Maurice,* 185 U. S. 108. A demurrer to the complaint was sustained on the ground of want of jurisdiction and a judgment entered for the defendant, and thereupon the case was brought directly to this court on writ of error.

*Mr. Branch K. Miller, Mr. William F. Vilas, Mr. James K. Jones* and *Mr. J. H. McGowan* for plaintiffs in error.

*Mr. Solicitor General Hoyt* and *Mr. Marsden C. Burch* and *Mr. Robert A. Howard,* Special Assistants to the Attorney General, for defendants in error.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

The only question decided by the Circuit Court was one of jurisdiction, but the record contains no certificate of that question nor anything which can be considered an equivalent thereto. The demurrer filed by the defendant stated three grounds therefor: First, a want of jurisdiction over the present defendant; second, a like want of jurisdiction over the subject matter of the action; and, third, that the complaint did not state facts sufficient to constitute a cause of action. The judgment was that the "demurrer to the jurisdiction . . . be sustained" and the complaint dismissed. In the opinion of the court only the question of jurisdiction over the subject matter was discussed. The assignment of errors contains nine specifications, some going to the matter of jurisdiction; others, such as the fifth, eighth and ninth, running to the merits, the ninth being general and in this language: "The court erred in divers other matters manifest upon the face of the record of said action." The petition for a writ of error alleged that the plaintiffs, "being aggrieved by the judgment made and en-

tered in the above entitled cause on the 12th day of January, 1903, and the several rulings of the court herein, file herewith their assignment of errors in said cause and pray a writ of error to the end that the rulings and judgment of said court in said cause may be reversed by the Supreme Court of the United States." This petition was allowed generally and without any limitation or specification. The necessity of a certificate was affirmed in *Maynard* v. *Hecht*, 151 U. S. 324, and what may be considered a sufficient certificate or taken as equivalent thereto considered in *In re Lehigh Mining & Manufacturing Campany*, 156 U. S. 322; *Shields* v. *Coleman*, 157 U. S. 168; *The Bayonne*, 159 U. S. 687; *Interior Construction Company* v. *Gibney*, 160 U. S. 217; *Van Wagenen* v. *Sewall*, 160 U. S. 369; *Chappell* v. *United States*, 160 U. S. 499; *Smith* v. *McKay*, 161 U. S. 355. The case of *Chappell* v. *United States*, *supra*, is closely in point. In that case Mr. Justice Gray, speaking for the court, after referring to tests laid down in prior cases, observed (p. 508):

"The record in the present case falls far short of satisfying any such test. The defendant, among many other defences, and in various forms, objected to the jurisdiction of the District Court, because the act of Congress under which the proceedings were instituted was unconstitutional, because the proceedings were not according to the laws of the United States, and because they should have been had in a court of the State of Maryland; and the court, overruling or disregarding all the objections, whether to its jurisdiction over the case, or to the merits or the form of the proceedings, entered final judgment for the petitioners. There is no formal certificate of any question of jurisdiction; the allowance of the writ of error is general, and not expressly limited to such a question; and the petition for the writ, after mentioning all the proceedings in detail, asks for a review of all the 'rulings, judgments and orders' of the court 'upon the question of jurisdiction raised in said exceptions, pleas and demurrers, and the other papers on file in this cause,' without defining or indicating any

specific question of jurisdiction. Here, certainly, is no such clear, full and separate statement of a definite question of jurisdiction as will supply the want of a formal certificate under the first clause of the statute."

There being no sufficient certificate of jurisdiction, counsel for plaintiffs in error rely upon the proposition that there is involved in the case the application of the Constitution of the United States, and also the meaning and force of the treaty of October 21, 1803, between the United States and the Republic of France, and that, therefore, the case was rightfully brought directly to this court.

"But no question of jurisdiction. having been separately certified or specified, and the writ of error having been allowed without restriction or qualification, this court, under the other clause of the statute, above cited, has appellate jurisdiction of this case as one in which the constitutionality·of a law of the United States was drawn in question." *Chappell* v. *United States, supra,* 509. See also *Giles* v. *Harris,* 189 U. S. 475, 486.

The title upon which the plaintiffs rest was a grant made on February 22, 1788, by the governor general, in the name of the King of Spain, then the sovereign of the territory, and, as contended, protected by the treaty of 1803, which provided that the inhabitants of the province ceded should, among other things, "be maintained and protected in the free enjoyment of their . . . property." It was alleged that such provision, by a just construction of the treaty, extended to the property of the original grantee and descended from him to his heirs, but that the United States, denying that plaintiffs were entitled to be maintained and protected in the enjoyment of their said property by any construction of the treaty, asserted title to the land, expelled the plaintiffs from possession and delivered it over to the defendant in this action, and that said defendant is in possession by direction of the United States, in pursuance of the unlawful and unjust possession so given him, and without any other right or claim of right than as an officer of the United States. Plaintiffs also

averred that they were lawfully possessed of the land by inheritance from their ancestor, and that the United States, without process of law and without legal right so to do, took the same for public use without any compensation, and established defendant in possession thereof wrongfully and unjustly. By virtue of these allegations they contend that there is involved in this case the construction of a treaty, as well as the application of the Constitution of the United States, which forbids the taking of private property for public use without just compensation.

But it is well settled that in ejectment the plaintiffs must rest on their own title. If that title fails it is immaterial what wrong the defendant may have committed. There is nothing in the statutes of Arkansas which changes this rule. The averments of an infraction by the United States of its obligations under the treaty or an unlawful act in taking possession without compensation in defiance of the Constitution do not add to the plaintiffs' title. So far as the cause of action is concerned these averments are superfluous. Any action by the government is matter of defence and may never be presented by the defendant. He has a right to go to trial on the sufficiency of the title presented by the plaintiffs, and need neither plead nor prove the rightfulness of his possession by whomsoever it may have been given to him until they have shown that they have a title to the premises.

"The right of the plaintiff to sue cannot depend on the defence which the defendant may choose to set up. His right to sue is anterior to that defence, and must depend on the state of things when the action is brought." *Osborn* v. *Bank*, 9 Wheat. 738, 824.

"By the settled law of this court, as appears from the decisions above cited, a suggestion of one party, that the other will or may set up a claim under the Constitution or laws of the United States, does not make the suit one arising under that Constitution or those laws." *Tennessee* v. *Union & Planters' Bank et al.*, 152 U. S. 454, 464.

See also *Chappel* v. *Waterworth,* 155 U. S. 102; *Walker* v. *Collins,* 167 U. S. 57; *Sawyer* v. *Kochersperger,* 170 U. S. 303, in which this court said:

"The case was removed into the Circuit Court of the United States, but improvidently, as it falls within the rule laid down in *Tennessee* v. *Banks,* 152 U. S. 454, notwithstanding the petition stated that defendants declined to pay on the ground that the law imposing the taxes was in violation of the Constitution of the United States." *Florida Central &c. Railroad* v. *Bell,* 176 U. S. 321, 329; *Arkansas* v. *Kansas & Texas Coal Company,* 183 U. S. 185.

We have not considered whether the averments distinctively made of the plaintiffs' title were sufficient to vest jurisdiction in the Circuit Court, for that question was settled against the plaintiffs by the decision in *Filhiol* v. *Maurice, supra.*

As the plaintiffs' statement of their right to the possession of this land disclosed no case within the jurisdiction of the Circuit Court, that jurisdiction was not established by allegations as to the defence which the defendant might make or the circumstances under which he took possession.

The judgment of the Circuit Court is

*Affirmed.*