The ONEIDA INDIAN NATION OF NEW YORK STATE, also known as the Oneida Nation of New York, also known as the Oneida Indians of New York, and The Oneida Indian Nation of Wisconsin, also known as the Oneida Tribe of Indians of Wisconsin, Inc., Appellants,

v.

The COUNTY OF ONEIDA, NEW YORK, and The County of Madison, New York, Appellees.

No. 720, Docket 72–1029.

United States Court of Appeals, Second Circuit.

Argued June 5, 1972.

Decided July 12, 1972.

Lumbard, Circuit Judge, dissented and filed opinion.

George C. Shattuck, Syracuse, N. Y. (Bond, Schoeneck & King, Syracuse, N. Y., of counsel), for appellants.

William L. Burke, Atty. for County of Madison, Hamilton, N. Y., for County of Madison.

Rocco S. Mascaro, Utica, N. Y. (Raymond M. Durr, Boonville, Atty. for County of Oneida, of counsel), for County of Oneida.

Charles Donaldson, Syracuse, N. Y., of counsel, American Civil Liberties Union and David H. Getches, Boulder Colo., and Peter J. Aschenbrenner, of counsel, Native American Rights Fund, for appellants, amicus curiae.

Before FRIENDLY, Chief Judge, and LUMBARD and MULLIGAN, Circuit Judges.

FRIENDLY, Chief Judge:

This appeal from an order of the District Court for the Northern District of New York, dismissing a complaint by two Indian nations for want of federal jurisdiction, takes us back to the early days of the Republic. Although on the surface the controversy seems highly appropriate for federal cognizance, that claim shatters on the rock of the "well-pleaded complaint" rule for determining federal question jurisdiction, and we find no other basis that would permit a federal court to entertain the action.

The principal allegations of the complaint are as follows: The plaintiffs are The Oneida Indian Nation of New York State, an Indian Nation or Tribe with its principal reservation in Oneida and Madison Counties, New York, and The Oneida Indian Nation of Wisconsin, an incorporated Indian Nation or Tribe with its principal reservation in Wisconsin. The defendants are the two New York counties just mentioned. After alleging the required jurisdictional amount and diversity of citizenship,[1] the complaint dips into history. Prior to the American Revolution the Oneidas owned some 6,000,000 acres of land in central New York. In contrast to other New York Indian tribes, they fought on the side of the colonists. See U.S. Dept. of Interior, Federal Indian Law 966–67 n. 1 (1958) [hereinafter cited as Federal Indian Law]. In recognition of this, a number of treaties were made confirming them in the possession of their lands, except such as they had sold or might choose to sell.[2] To implement these and other treaty obligations, the first Congress adopted the Indian Non-Intercourse Act, 1 Stat. 137 (1790), later Rev. Stat. § 2116, and now 25 U.S.C. § 177. This provided, *inter alia:*

> No purchase, grant, lease, or other conveyance of lands, or of any title or claim thereto, from any Indian nation or tribe of Indians, shall be of any validity in law or equity, unless the same be made by treaty or convention entered into pursuant to the Constitution.

President Washington explained the statute to a delegation of Seneca Indians as follows:

> "Here, then, is the security for the remainder of your lands. No state, nor person, can purchase your lands,

---

1. Following defendants' motion to dismiss the complaint on numerous grounds, one of which was lack of subject-matter jurisdiction, plaintiffs cross-moved to amend the complaint, see note 3 *infra,* F.R.Civ.P 15(a), to allege that "Jurisdiction is conferred by diversity of citizenship and because this complaint presents a federal question involving the Constitution, Article I, Section 8, Clause 3, the Treaties, and the Laws of the United States, and plaintiffs claim relief under such Constitution, Treaties, and Laws." Civil rights jurisdiction, 42 U.S.C. § 1983, 28 U.S.C. § 1343, was also alleged. The district court granted plaintiffs' motion to amend, and further ordered that defendants' motion to dismiss be deemed made against the amended complaint.

2. See Treaty of October 22, 1784, 7 Stat. 15; Treaty of January 9, 1789, 7 Stat. 33; Treaty of November 11, 1794, 7 Stat. 44; Treaty of December 2, 1794, 7 Stat. 47. See Federal Indian Law 965, 970–72.

unless at some public treaty, held under the authority of the United States. The General Government will never consent to your being defrauded, but it will protect you in all your just rights."

Prior to adoption of the statute, the Oneidas, in the Treaty of Fort Stanwix in 1788, between themselves and the State of New York, had ceded over 5,000,000 acres of their lands to New York State for what now seems an absurdly small consideration. They had reserved about 300,000 acres in Oneida and Madison Counties. In 1795 representatives of New York State procured the cession by "treaty," see Federal Indian Law 513 n. 6; cf. Seneca Nation v. Christy, 162 U.S. 283, 16 S.Ct. 828, 40 L.Ed. 970 (1896), of a large portion of these lands, again for what now seems an inadequate consideration and allegedly was so even then. The complaint asserts that no federal consent was obtained, that no United States Commissioner was present at the negotiation or execution of the purported treaty, and that the United States has never approved or ratified it. Part of the premises deeded in 1795 became the property of the defendant counties which currently occupy them for buildings, roads or other public improvements. "By reason of such occupancy of plaintiffs' premises, defendants for

the period January 1, 1968 through December 31, 1969 became indebted to plaintiffs for the fair rental value of such premises to the extent of at least $10,000.00, exclusive of costs and interest." [3] Plaintiffs demanded judgment for at least $10,000.00 "plus such other and further monetary damages as the Court may deem just."

Appealing from a dismissal of the complaint for lack of federal jurisdiction, the Oneidas assert three different bases—the existence of a federal question, diversity of citizenship and, surprisingly, a claim under the Civil Rights Act.

## I.

 As stated, on a surface reading the complaint would seem to state a claim which "arises under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331(a), or to institute an action "by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1362.[4] Decision would ultimately turn on whether the deed of 1795 complied with what is now 25 U.S.C. § 177 and what the consequences would be if it did not.[5] How-

3. The quoted language was added, in an amendment as a matter of course, F.R. Civ.P. 15(a), as ¶ 22 of plaintiffs' complaint; ¶ 18 of the original and amended complaints alleges in part that "By reason of said occupancy [by defendants] plaintiffs have been denied use of such parts of the premises and have been damaged to the extent of at least $10,000, exclusive of costs and interest." Whether these claims are viewed as distinct causes of action, or simply as alternative statements of an appropriate measure of damages on the same cause of action, the outcome is equally unavailing to plaintiffs. While plaintiffs only claimed rental value for a two-year period, they sought to preserve their claim for rental value for both prior and subsequent years.

4. The jurisdictional issue in this case is the same under either section. Apart

from the use of the same language as in § 1331, the legislative history makes clear that the sole purpose of § 1362 was to remove any requirement of jurisdictional amount. See 1966 U.S.Code Cong. & Admin.News, pp. 3145–3149. The decision, Yoder v. Assiniboine and Sioux Tribes of Fort Peck Indian Reservation, Mont., 339 F.2d 360 (9 Cir. 1964), which the statute aimed to overrule, involved a claim that would have been assertable under § 1331 but for the requirement of jurisdictional amount.

5. Although the complaint makes copious reference to various Indian treaties, see note 2 supra, which are indeed considered to constitute "treaties" within applicable jurisdictional legislation, Worcester v. Georgia, 31 U.S. (6 Pet.) 515, 541, 8 L.Ed. 483 (1832), see Federal Indian Law 138–44, it does not make clear how the deed was in breach of them. However,

ever, this alone does not establish the existence of federal question jurisdiction. "Under existing law it is well established that federal question jurisdiction is present only if the reliance on a federal right appears on the face of the well-pleaded complaint. The first Supreme Court decision to construe the Act of 1875 [creating general federal question jurisdiction] applied such a rule, citing Chitty to determine what allegations were proper, Gold-Washing & Water Co. v. Keyes, 96 U.S. 199 (1877), and the rule has been insisted upon ever since." ALI Study of the Division of Jurisdiction between State and Federal Courts, Commentary on § 1311, p. 169 (1969). One effect of the rule is to bar "access to federal court on the basis of allegations which are not required by nice pleading rules," *Id.* at 169–70, notably in cases involving rights to land.

■■■■ Although plaintiffs' only specific claims for relief are for two years' rental value as a result of defendants' occupancy, or damages for denial of plaintiffs' right of use, see note 3 *supra,* their success depends upon establishment of their right to possession, see Willis v. McKinnon, 178 N.Y. 451, 70 N.E. 962 (1904); Crawford v. Town of Hamburg, 19 A.D.2d 100, 241 N.Y.S.2d 357 (1963), and the action is thus basically in ejectment. As to this, a long and unbroken line of Supreme Court decisions holds that the complaint in such an action presents no federal question even when a plaintiff's claim of right or title is founded on a federal statute, patent or treaty. Florida Central & P. Railroad v. Bell, 176 U.S. 321, 20 S.Ct. 399, 44 L.Ed. 486 (1900); Filhiol v. Maurice, 185 U.S. 108, 22 S.Ct. 560, 46 L.Ed. 827 (1902); Filhiol v. Torney, 194 U.S. 356, 24 S.Ct. 698, 48 L.Ed. 1014 (1904); Taylor v. Anderson, 234 U.S. 74, 34 S.Ct. 724, 58 L.Ed. 1218 (1914); White v. Sparkhill Realty Corp., 280 U.S. 500, 50 S.Ct. 186, 74 L.Ed. 578 (1930). These decisions were followed and applied by this court in Deere v. St. Lawrence River Power Co., 32 F.2d 550 (2 Cir. 1929).[6]

The frequently cited decision in Taylor v. Anderson, *supra,* written for a unanimous Court by Mr. Justice Van Devanter, who spoke with particular authority on federal jurisdiction, is directly in point. The complaint in an action in ejectment "alleged with much detail that the defendants were asserting ownership in themselves under a certain deed, and that it was void under the legislation of Congress restricting the alienation of lands allotted to the Choctaw and Chickasaw Indians." 234 U.S. at 74–75, 34 S.Ct. at 724. This was held not to state a claim arising under the laws of the United States, since all that *needed* to be alleged was "that the plaintiffs were owners in fee and entitled to the possession; that the defendants had forcibly taken possession and were wrongfully keeping the plaintiffs out of possession, and that the latter were damaged thereby in a sum named." *Id.* at 74, 34 S.Ct. at 724.[7] It was of

we need not pursue the point since the complaint clearly does allege that the deed was executed in violation of a federal statute.

6. Recognizing that all the cited cases were decided before adoption of the Federal Rules of Civil Procedure in 1938, we have considered whether the binding force of these decisions could have been affected by the Rules, more particularly by Rule 8(a) with respect to the complaint. We do not see how this result could ensue. The objective of Rule 8(a) was to make complaints simpler, rather than more expansive. Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Moreover, the rule-making statute, 48 Stat. 1064 (1934), provided that the rules "shall neither abridge, enlarge, nor modify the substantive rights of any litigant," and Rule 82 directs that the rules "shall not be construed to extend or limit the jurisdiction of the United States district courts or the venue of actions therein." Snyder v. Harris, 394 U.S. 332, 337–38, 89 S.Ct. 1053, 1057, 22 L.Ed.2d 319 (1969), is a recent and pertinent application of Rule 82.

7. Judge Port correctly held that only such allegations are needed under New York law. See Weiss v. Goffen, 26 Misc.2d 988, 207 N.Y.S.2d 163 (Sup.Ct.1960).

no moment that the defendants might and probably would defend on the basis of the deed, which the plaintiffs would then challenge as invalid under federal legislation. Jurisdiction "must be determined from what *necessarily* appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose." *Id.* at 75–76, 34 S.Ct. at 724. (Emphasis supplied). ·

Plaintiffs are not aided by decisions of this court on which they heavily rely. Tuscarora Nation of Indians v. Power Authority, 257 F.2d 885 (2 Cir.), cert. denied, 358 U.S. 841, 79 S.Ct. 66, 3 L.Ed. 2d 76 (1958), was not an action in ejectment by Indians who were out of possession but a suit for an injunction by Indians who were in possession. In such an action, as in the case of a bill to remove a cloud on title, Hopkins v. Walker, 244 U.S. 486, 37 S.Ct. 711, 61 L.Ed. 1270 (1917),[8] a complete statement of plaintiff's claim to relief is appropriate. Ivy Broadcasting Co. v. American T. & T. Co., 391 F.2d 486 (2 Cir. 1968), characterized in appellants' brief as "directly on point," is even further from the mark. The significant holding there was that a case could be regarded as arising under a law of the United States even though this was "federal common law" rather than a statute, a view recently affirmed by the Supreme Court, Illinois v. City of Milwaukee, 406 U.S. 91, 99–100, 92 S.Ct. 1385, 1390, 31 L.Ed.2d 712 (1972). Plaintiffs do not need to resort to that doctrine, since the 1794 statute, now 25 U.S.C. § 177, would be a law of the United States on any basis; their difficulty is that, on the rather technical view taken by the Supreme Court, their action does not "arise" thereunder.

■■ We have considered the possibility of sustaining the complaint on a different ground, not suggested by the plaintiffs, but find this also to be precluded. Article 15 of the New York Real Property Actions and Proceedings Law, McKinney's Consol.Laws, c. 81, provides that any person claiming an estate or interest in real property may maintain an action against any other person "to compel the determination of any claim adverse to that of the plaintiff which the defendant makes, or which it appears from the public records, or from the allegations of the complaint, the defendant might make," § 1501. Contrary to the common law, this permits an action to remove a cloud from title to be brought by a person not in possession. See N.Y. Real Property Actions and Proceedings Law § 1515; Burke v. Suburban Mortgage Corp., 43 Misc.2d 1077, 252 N.Y.S.2d 911 (Sup.Ct.1964).

However, even if we were to make the unlikely assumption that the New York legislature intended this remedy to be available to Indian tribes, and could properly make it so in a case like this, see note 9 *infra,* plaintiffs can gain nothing from it. It is settled that federal courts may not apply state statutes expanding equity jurisdiction beyond that prevailing when the Constitution was adopted. This is no technical quibble but a rule deemed to be required by the Seventh Amendment's guarantee of jury trial in actions at law. Whitehead v. Shattuck, 138 U.S. 146, 11 S.Ct. 276, 34 L.Ed. 873 (1891), which was cited with approval and reaffirmed in Guaranty Trust Co. v. York, 326 U.S. 99, 105–106, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), is almost directly in point. An Iowa statute gave any claimant, whether in or out of possession, the right to bring an action in equity to quiet title. The Court upheld the sustaining of a demurrer to such a suit in federal court when the defendant was in possession, since the plaintiff had an adequate remedy at law

---

8. But not in the case of a suit to quiet title, Shulthis v. McDougal, 225 U.S. 561, 32 S.Ct. 704, 56 L.Ed. 1205 (1912). As has been well said, "It would be very surprising if this ancient lore as to the forms of action should correspond to any functional justification for federal question jurisdiction," ALI Study, *supra,* at 170.

in federal court. While the decision relied on § 16 of the Judiciary Act of 1789 (later Rev.Stat. § 723 and 28 U.S.C. § 384 (1940 ed.)), which limited suits in equity to cases in which there was no "plain, adequate and complete remedy" at law, and that statute was repealed in 1948 as obsolete in view of the merger of law and equity under the Federal Rules of Civil ·Procedure, 62 Stat. 992, the principle remains intact. Cf. Stainback v. Mo Hock Ke Lok Po, 336 U.S. 368, 382 nn. 26, 27, 69 S.Ct. 606, 614, 93 L.Ed. 741 (1949); Potwora v. Dillon, 386 F.2d 74, 77 (2 Cir. 1967).

Plaintiffs might argue against this that here they have no adequate remedy at law in a federal court since, for the reasons stated above, there is no federal question jurisdiction over an action in ejectment and, as will later appear, we find no other sustainable ground of federal jurisdiction. But such an argument would be largely answered by Di Giovanni v. Camden Fire Ins. Ass'n, 296 U.S. 64, 69–70, 56 S.Ct. 1, 80 L.Ed. 47 (1935). See also Matthews v. Rodgers, 284 U.S. 521, 525–526, 52 S.Ct. 217, 76 L.Ed. 447 (1932); Atlas Life Ins. Co. v. Southern, 306 U.S. 563, 568–570, 59 S.Ct. 657, 83 L.Ed. 987 (1939). Di Giovanni was a suit in equity in the District Court for Missouri by a New Jersey fire insurance company against citizens of Missouri to cancel two fire insurance policies, one for $3,000 and another for $1,-500, as obtained by fraud. The Court held that the action must be dismissed because of the existence of an adequate remedy at law, namely, the defense of actions on the two policies. Although "the inadequacy prerequisite to relief in a federal court of equity is measured by the character of remedy afforded in federal rather than in state courts of law," 296 U.S. 64 at 69, 56 S.Ct. 1 at 3, plaintiff did not demonstrate inadequacy by showing that the jurisdictional amount, then $3,000, would prevent suits on the policies from being maintained in or removed to a federal court. "The statute [28 U.S.C. § 384 (1940 ed.)] forbids resort to equity in the federal courts when

they afford adequate legal relief. It does not purport to command that equitable relief shall be given in every case in which they fail to do so." Id. at 70, 56 S.Ct. at 4. In other words, adequacy of the legal remedy is tested by what a federal court could afford if it had jurisdiction, not by what it could do in the particular case. We do not believe this doctrine would yield even if, as seems not improbable, see note 9 infra, the plaintiffs are likewise without a remedy in the New York courts. While we recognize that Di Giovanni differs on its facts in that there the prospective defendant at law was the plaintiff in equity, we see nothing in Mr. Justice Stone's opinion that would render this distinction significant.

## II.

Appellants also sought to sustain federal jurisdiction on the basis of diversity, 28 U.S.C. § 1332(a). Conceivably this could be either under § 1332(a) (1) conferring jurisdiction in actions between "citizens of different States" or under § 1332(a) (3) conferring jurisdiction in actions between "citizens of different States and in which foreign states or citizens or subjects thereof are additional parties."

The district court, finding it unnecessary to deal with plaintiffs' claim that The Oneida Tribe of Wisconsin, Inc. was a citizen of Wisconsin, focused on the status of The Oneida Indian Nation of New York. It considered that the most likely analogy was that of an unincorporated association, with the result that, under United Steelworkers of America v. R. H. Bouligny, Inc., 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965), jurisdiction under § 1332(a) (1) would be defeated by the New York citizenship of many of the Nation's members. Appellants contend that the analogy is false since an Indian nation is something unique. See Federal Indian Law 341. Even if that be so, it would not avail the plaintiffs under § 1332(a) (1). In Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), Chief

Justice Marshall stated the rule of complete diversity to be "that each distinct interest should be represented by persons, all of whom are entitled to sue, or may be sued, in the federal courts. That is, that where the interest is joint, each of the persons concerned in that interest must be competent to sue, or liable to be sued, in those courts." 7 U.S. (3 Cranch) at 267. This formulation has been followed in subsequent cases. See, e.g., Florida Central & P. Railroad v. Bell, 176 U.S. 321, 20 S.Ct. 399, 44 L.Ed. 486 (1900); Hooe v. Jamieson, 166 U.S. 395, 17 S.Ct. 596, 41 L.Ed. 1049 (1897); New Orleans v. Winter, 14 U.S. (1 Wheat.) 91, 4 L.Ed. 44 (1816); see also Levering & Garriques Co. v. Morrin, 61 F.2d 115, 121 (2 Cir. 1932), aff'd, 289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062 (1933). The Oneida Nation of New York is surely not a citizen of a state different from New York, and the case under § 1332(a) (1) thus fares no better on plaintiffs' theory than on that of the district judge since the Nation's lack of citizenship in a state other than New York would equally defeat diversity jurisdiction.

▮ Neither can plaintiffs establish diversity jurisdiction under § 1332(a) (3). Even if The Oneida Nation of Wisconsin, Inc. should be regarded as a citizen of Wisconsin for diversity purposes, the Oneida Nation of New York is not "a foreign state." This was established as long ago as Cherokee Nation v. Georgia, 30 U.S. (5 Pet.) 1, 17–18, 8 L.Ed. 25 (1831).[9]

## III.

▮ For this case a sufficient answer to the claim of jurisdiction under the Civil Rights Act, 42 U.S.C. § 1983, and its jurisdictional implementation, 28 U.S.C. § 1343(3), is that, at least with respect to damage suits, a county is not a "person" within the meaning of these statutes, Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Beyond that, the claim is impossible to fathom. Apparently it is based on the

9. Since there is no diversity under either § 1332(a) (1) or (a) (3), we have no need to consider whether, as held in Hot Oil Service, Inc. v. Hall, 366 F.2d 295 (9 Cir. 1966), on the asserted analogy of the rule relating to state "door-closing" statutes, see Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947); Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949), diversity jurisdiction would also be precluded by lack of jurisdiction in the courts of New York, if lack there is. The prevailing rule since Worcester v. Georgia, 31 U.S. (6 Pet.) 515, 8 L.Ed. 483 (1832), has been that state courts may not exercise jurisdiction over Indian tribal affairs or claims arising out of or relating to their restricted tribal lands. See Federal Indian Law 363–64. The history of this restriction, the judicial modifications of it, and its current status are discussed in Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959). Williams reveals that the major role, sanctioned by Art. I, § 8, cl. 3 of the Constitution, in modifying this rule designed for the protection of Indians, has been played by Congress. "[W]hen Congress has wished the States to exercise this power it has expressly granted them jurisdiction which Worcester v. Georgia had denied." 358 U.S. at 221, 79 S.Ct. at 271.

In that connection the Court referred to 25 U.S.C. § 233, adopted in 1950, 64 Stat. 845, which, with certain qualifications, gave the New York courts jurisdiction "in civil actions and proceedings between Indians or between one or more Indians and any other person or persons," subject, however, to a proviso that the grant should not extend to "civil actions involving Indian lands or claims with respect thereto which relate to transactions or events transpiring prior to September 13, 1952." Appellants point to a statement of the proposer of this proviso on the floor of the House of Representatives, 96 Cong.Rec. 12460 (1950), that in addition to the access to state courts granted by the bill, the Indians "may go into the federal courts and adjudicate any differences they have had between themselves and the great State of New York relative to their lands, or claims in regard thereto, and I am sure that the State of New York should have and no doubt will have no objection to such provision." But the bill in fact made no "such provision," and the statement is altogether too tenuous a basis to confer federal jurisdiction not granted by the detailed provisions of Chapter 85 of Title 28.

fact that although § 11–a of the New York Indian Law, McKinney's Consol. Laws, c. 26, added by N.Y.Laws 1958, c. 400, apparently to implement 25 U.S.C. § 233, is broad enough on its face to encompass an action like this, it may not be effective because of the proviso in the latter section restricting the grant of jurisdiction to New York courts so as to exclude land claims based on transactions or events antedating September 13, 1952, see note 9 —supra—a matter on which we take no position. Even if the Oneidas' fears should be realized, we fail to understand how a state could be thought to have violated the Constitution in going only so far as federal law permits.

The judgment dismissing the complaint for want of federal jurisdiction is affirmed.[10]

LUMBARD, Circuit Judge (dissenting):

I dissent.

The district court had jurisdiction to hear the claims of the Oneida Indians which are based on 1784, 1789 and 1794 treaties between the United States and the Oneidas and five other tribes, known as the Six Nations.

Jurisdiction was conferred by 28 U.S.C. § 1362, enacted in 1966, which provides:

§ 1362. Indian tribes

The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States. Added Pub.L. 89–635, § 1, Oct. 10, 1966, 80 Stat. 880.

The claims here are based on the allegations that the lands in question, occupied by the Counties of Oneida and

Madison, were acquired by the State of New York in 1795 by a so-called "treaty" in violation of the provisions of the 1784, 1789 and 1794 treaties. The demand for relief is that the Oneidas be recognized as owners of the lands and that they be paid for the use of the lands. As these claims rest on treaties between the Oneidas and the United States, the Oneidas have a right to have them determined in a federal court. The legislative history of the 1966 amendment shows that it was the purpose of the Congress to make sure that the Indian tribes did have a forum to which they could go themselves when government departments and agencies declined to represent them. U.S.Code and Administrative News 1966, Vol. 2, pp. 3145–3149. This view is supported by what we held and said in Tuscarora Nation of Indians v. Power Authority, 257 F.2d 885 (2 Cir.), cert. denied 358 U.S. 841, 79 S.Ct. 66, 3 L.Ed.2d 76 (1958). I am not persuaded that any federal or state court decision or any state statute can defeat the plain meaning of § 1362 or diminish the stature of our agreements with the Six Nations to make them anything less than treaties of the United States.

The "well-pleaded complaint" rule by which the majority declares this action beyond the cognizance of the federal courts is not necessarily applicable here. The "arising under" language of the Constitution, § 1331, and § 1362 is virtually identical, yet the grant of jurisdiction under § 1331 has long been considered less generous than the Constitutional grant. Compare Osborn v. Bank of United States, 22 U.S. 738, 9 Wheat. 738, 6 L.Ed. 204 (1824), with Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908) and Louisville & Nashville R.R. Co. v. Mottley, 219 U.S. 467, 31 S.Ct. 265, 55 L.Ed. 297 (1911); see Wright, Federal Courts, 54–60. I would hold that the "arising under" language of § 1362 merits the

10. We are advised that the Oneidas have filed a claim relating to the transaction here at issue with the Indian Claims Commission, 25 U.S.C. § 70a, and have received an award, but that the United States has appealed this to the Court of Claims.

broader interpretation and, consequently, that we should disregard the inhibitory effect of the "well-pleaded complaint" rule, at least until the Supreme Court has passed on the question.

Moreover, the federal interest in seeing that the rights of Indian tribes are heard and adjudicated is so great that they should be controlled by federal common law. Thus the claims should be considered to arise under the laws, as well as under treaties, of the United States. Ivy Broadcasting Co. v. American Tel. & Tel., 391 F.2d 486 (2 Cir. 1968). Whatever merit these claims may have, it seems unthinkable to me that there should be no judicial forum in which they can be brought, be heard and be determined.

For these reasons I would reverse the order of the district court.