**1336**

HEIRS of Hubert BURAT (Buras), et al.,
Plaintiffs-Appellants,

Janet Easterling and Jack Buras,
Movants-Appellants,

v.

BOARD OF LEVEE COMMISSIONERS
OF the ORLEANS LEVEE DISTRICT
OF the STATE OF LOUISIANA et al.,
Defendants-Appellees.

No. 73–2380.

United States Court of Appeals,
Fifth Circuit.

July 15, 1974.

Rehearing Denied Aug. 12, 1974.

John H. Brooks, New Orleans, La., Peter C. LaDart, Harvey, La., for Heirs of Burat.

Charles R. Maloney, Forrest L. Bethay, Sr., New Orleans, La., for movants.

James E. Wright, Jr., New Orleans, La., for Grove.

Eugene G. Taggart, New Orleans, La., for La. Power & Light.

W. S. Shirley, Jr., Lawrence K. Benson, New Orleans, La., for Standard Oil.

Booth Kellough, New Orleans, La., William G. Duck, John E. Bailey, Houston, Tex., for Gulf Refining.

David A. Kerstein, New Orleans, La., for Estate of W. G. Helis.

John T. McMahon, Alvin B. Gibson, New Orleans, La., for Shell Oil.

Richard J. McGinity, Jr., New Orleans, La., for Bd. of Levee Comm.

Peter E. Duffy, Metairie, La., for Wildlife & Fisheries.

Before RIVES, GEWIN and RONEY, Circuit Judges.

RONEY, Circuit Judge:

The heirs of Hubert Burat, a Louisiana pioneer who died in 1847, bring this action as class plaintiffs, approximately 550 in number, for declaratory judgment, money damages and injunctive relief. They seek to establish title to four sections of land, over 700 acres, in Plaquemines Parish, Louisiana, settled by their ancestor prior to 1795, land once colorfully described as "Batture du Diable," the land of the devil. The complaint seeks money damages in the amount of $100,000,000 against the Board of Levee Commissioners of the Orleans Levee District, a state governmental agency, and nine other private and public defendants alleged to be bad faith possessors of the land. The plaintiffs request an injunction against the defendants' continued possession. The District Court, with a good statement of reasons, dismissed the complaint for lack of federal jurisdiction of the subject matter. We affirm.

The plaintiffs' brief tells us that the Burat settlement was some 60 miles below New Orleans on the east bank of the Mississippi River and that Burat endured flood, mosquitoes, storms, hurricanes and disease for his land. What is more, he did it all on his own. New Orleans was in those days a three-day trip by horse, and civilization's only real representative was a seasonal priest who made it "down below" perhaps once a year to solemnize marriages, christen babies and resolve quarrels. Thus, the base claim to ownership of the land by Burat predates the Louisiana Purchase.

The factual history since then is both interesting and complicated, but it is not necessary to this decision to make a complete recitation of that history. It involves disputes at various junctures in the chain of title since 1803. Although the Louisiana Purchase incorporated Burat's land into the United States, statutes formulated thereafter made it possible for Burat to claim the land on which he lived and worked. His attempts to perfect his title, however, went unsatisfied due to an erroneous survey which showed Burat's four sections of land to be where they were not, and at the same time showed those sections which he was actually settling and occupying with his family as being vacant. This error enabled others to file a claim for his land so that two lines of title developed. In 1837, a federal land register and recorder included Burat's corrected claim in his report to Congress and in 1842, Congress confirmed Burat's ownership by special legislative act. In 1972 a patent for the tract was finally issued to the heirs of Hubert Burat, with this caveat:

> This patent shall only operate as a relinquishment of title on the part of the United States, and shall in no manner interfere with any valid adverse right to the same land, nor be construed to preclude a legal investigation and decision by the proper judicial tribunal between adverse claimants to the same land.

In the meantime, squatters and persons purporting to have ownership from the alleged erroneous claim of title took turns at occupying the land and in 1838 and 1839 patents were issued to these alleged "outlaw" claimants. During the period from 1924 to 1930, the Levee Board of the Orleans Levee District expropriated the property and became its owner. The Levee Board claims ownership through this expropriation and the other defendants claim leasehold interests from the Levee Board. The plaintiffs assert that this land was the exclusive property of the United States when it was expropriated and that the Levee Board exceeded its state authority and illegally and unconstitutionally assumed

ownership of the lands in a proceeding the plaintiffs described as a farce.

The defendants' brief cautions us that the colorful recitation of history by the plaintiffs should not obscure the fact that neither Hubert Burat nor his heirs asserted any interest or claim to the land in over 100 years, and their present claim is based on assertion of legal title and not on any rights acquired by possession.

Regardless of the interesting history in Burat's line of succession, however, the specific question before us is whether, since there is no diversity of citizenship between the parties, the plaintiffs' claim of title raises any federal question upon which to posit federal court jurisdiction under 28 U.S.C.A. § 1331(a). Section 1331(a) provides original jurisdiction to district courts of all civil actions for over $10,000 wherein the matter arises "under the Constitution, laws, or treaties of the United States." In bringing their suit, the heirs of Burat did not specify the federal question relied upon for jurisdiction but the trial court examined all allegations which might be considered as such and considered the contentions presented by plaintiffs in memorandum brief and oral argument to determine whether plaintiffs could, by amending their pleadings, state a case arising under the Constitution, laws or treaties of the United States, within the meaning of 28 U.S.C.A. § 1331. We too have considered lengthy oral argument and have carefully reviewed the briefs and authorities cited to us by the plaintiffs. Their brief lists a plethora of federal treaties, statutes, confirmations and patents: The Treaty of 1803 and The Acts of March 26, 1804 (2 Stat. 283); March 2, 1805 (2 Stat. 324); February 28 and April 21, 1806; April 25, 1812; May 11, 1820; February 6, 1835 (4 Stat. 749); January 12, 1825; July 6, 1842; and June 2, 1853. (The plaintiffs did not provide complete citations for these Acts, but our decision makes it unnecessary for us to examine them.)

The District Court found that federal jurisdiction, if existent, had to arise from the following allegations: (1) that plaintiffs' title to the lands derived from a United States patent issued on May 24, 1972, pursuant to a private claim confirmed by Act of Congress on July 6, 1842; (2) that the United States was the owner of the lands during the interim, but the patent had retroactive effect to the date of confirmation, and (3) that the defendant Board of Levee Commissioners wrongfully assumed ownership of the lands by various acts of expropriation during the period 1924 through 1932 in excess of its authority and in violation of the Constitution of the United States. In addition, plaintiffs assert that the United States has a continuing obligation to protect Burat's rights by virtue of the treaty obligations in the Louisiana Purchase.

Three principles to which we find no applicable exceptions foreclose federal jurisdiction of plaintiffs' claims: *first,* questions as to the title and rights to land within a state are of primary concern to that state and are not the customary business of federal courts; *second,* the fact that title derives from an Act of Congress or a United States patent does not raise a federal jurisdictional question; and *third,* federal jurisdiction must appear from those allegations necessary to state plaintiffs' own claim and cannot rest upon the assertion that the defense raises or will raise a federal question. Finding further that the recent Supreme Court case of Oneida Indian Nation v. Oneida County, 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974) does not furnish plaintiffs with a key to the federal courthouse, we leave the heirs of Burat to test their title in state court.

■ That land title and possessory actions are normally not the business of federal courts is not questioned by plaintiffs and is such a firm concept that it needs no amplification. *See, e. g.,* Beauregard v. New Orleans, 59 U.S. (18 How.) 497, 15 L.Ed. 469 (1855); White v. Burnley, 61 U.S. (20 How.) 235, 15

L.Ed. 886 (1857); Mays v. Kirk, 414 F. 2d 131 (5th Cir. 1969); *cf.* Aaron v. Florida Gas Transmission Co., 412 F.2d 802 (5th Cir. 1969).

■ It has become a settled principle of law that a jurisdictional federal question is not raised merely because title to land devolves from a patent, such as Burat's 1972 patent, or under an Act of Congress, such as Burat's 1842 confirmation. Oneida Indian Nation v. Oneida County, 414 U.S. 661, 782, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974) [42 U.S.L.W. 4195]; Shulthis v. McDougal, 225 U.S. 561, 32 S.Ct. 704, 56 L.Ed. 1205 (1911); Joy v. St. Louis, 201 U.S. 332, 26 S.Ct. 478, 50 L.Ed. 776 (1906); Florida C. & P. R. R. v. Bell, 176 U.S. 321, 20 S.Ct. 399, 44 L.Ed. 486 (1900).

Plaintiffs cite only three cases which appear to hold contrary to this proposition, United States v. White, 17 F. 561 (C.C.Cal.1893); Doolan v. Carr, 125 U. S. 618, 8 S.Ct. 1228, 31 L.Ed. 844 (1887); and McGilvra v. Ross, 215 U.S. 70, 30 S.Ct. 27, 54 L.Ed. 95 (1909). We think these cases readily distinguishable. *White* was a suit by the United States to set aside a patent obtained from it by fraud; *Doolan* was well distinguished after the decision in Joy v. St. Louis, 201 U.S. 332, 26 S.Ct. 478, 50 L.Ed. 776 (1906), by the opinion in Taylor v. Anderson, 197 F. 383 (C.C.E.D.Okla.1911), aff'd 234 U.S. 74, 34 S.Ct. 724, 58 L.Ed. 1218 (1914); and the *McGilvra* litigation turned entirely on whether a United States patent to lakeshore property passed title to lands below the highwater mark, or whether those lands vested in the state upon its admission to the Union. Even if these cases and other earlier cases could not be successfully distinguished, we agree with the defendants that they must be disregarded in light of the large number of subsequent opinions that consistently establish the principle.

Indeed, the heirs tend to recognize the validity of this general legal principle but contend that their case is different. Specifically, they argue that the involvement of two conflicting patents, one in each chain of title, requires a federal court to entertain the suit since only a federal court can invalidate a federal patent. We have found no authority which requires only federal courts to choose between conflicting patents. In fact, California Powder Works v. Davis, 151 U.S. 389, 14 S.Ct. 350, 38 L.Ed. 206 (1894), leads us to an opposite conclusion. The factual situation there was strikingly similar to that in the instant case: two parties claimed fee simple ownership of the same tract of California land originating from Mexican grants prior to the Treaty of Guadalupe Hidalgo. After the treaty, each party perfected its ownership to include two separate confirmations and patents from the United States. A quiet title suit was initiated in the California state courts which determined the rightful owner, ostensibly holding one federal patent to be inapplicable. The United States Supreme Court dismissed a writ of error to the California Supreme Court on the basis of no federal appellate jurisdiction. The California court's "invalidation" of a federal patent was upheld, disputing the Burats' contention that only federal courts can sort through conflicting patents. A federal question is not automatically raised because there are conflicting federal patents. Indeed, the courts of Louisiana have adjudicated contests between parties claiming title to lands under separate federal sources. *See, e. g.,* Lott v. Prudhomme, 3 Rob. 293 (1842); Watterston v. Bennett, 18 La.Ann. 250 (1866); Walsh v. Lallande, 25 La.Ann. 188 (1873); State v. Bozeman, 156 La. 635, 101 So. 4 (1924).

■ A second persuasive reason that a federal question as to a conflicting patent would not support plaintiffs jurisdictional claim furnishes the answer to another significant fact upon which the heirs rest their claim to federal jurisdiction: the alleged wrongful expropriation of the land by the Levee Board in violation of the United States Constitution. It is agreed that the Burats have sought to bring what would be called under Louisiana law, a petitory

cause of action, a civil action to adjudge title to and ownership of real estate as distinguished from one to try merely the right of possession, the equivalent of the common law action for ejectment to try title. The essential allegation in such an action is that the plaintiffs have title to lands possessed by the defendants. Just as plaintiffs' case rests on the strength of its own patent, not the possible invalidity of a conflicting patent, the attack on the defendants' title through allegations of wrongful and unconstitutional expropriation is not essential to the Burats' cause of action. Such allegations amount to possible defense on the strength of conflicting claims and to a negation of the Levee Board's possible expropriation defense. It is well settled that matters of defense anticipatorily alleged do not create federal question jurisdiction. Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936). Such attempts must fail under the "well-pleaded complaint" rule, stated in Taylor v. Anderson, 234 U.S. 74, 34 S.Ct. 724, 58 L.Ed. 1218 (1914) as follows:

> But the contention overlooks repeated decisions of this court by which it has become firmly settled that whether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute (now § 24, Judicial Code), must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.

234 U.S. at 75. *Accord* Joy v. St. Louis, 201 U.S. 332, 26 S.Ct. 478, 50 L.Ed. 776 (1906); Florida C. & P. R. R. v. Bell, 176 U.S. 321, 20 S.Ct. 399, 44 L.Ed. 486 (1900).

The Burats argue that their cause of action requires them to affirmatively show "title good against the world," thus making the wrongful expropriation an essential element of their case.

Their case does not depend, however, on the expropriation; it depends on the patent involved through which the Burats claim ownership. The Burats recognized this point in their reply brief when they reduced the case to its simplest terms:

> The plaintiff must prove a title; to do so he must prove that he holds a valid federal patent; accordingly, he must establish that his patent right is, in the face of other federal patents on the same land, the only patent of federal validity.

This is nothing more than any plaintiff would have to prove to succeed in an action of this kind. Proving that the Levee Board's expropriation was unconstitutional or that other patents are invalid is not part of the proof that their patent is valid. As stated in 1 Moore Fed. Practice, § 0.60(8–3) at 632:

> In determining whether plaintiff's claim is one "arising under," the elements of the claim must be understood. Thus if the action is one involving possession of real property and the plaintiff is out of possession so that his suit is essentially ejectment, the action can seldom if ever present a case "arising under," unless the plaintiff or defendant is a federal corporation. The reason is that a proper statement of claim consists of general allegations such as, plaintiff is the owner in fee simple of certain described property, the defendant wrongfully withholds possession, the plaintiff is entitled to immediate possession, and his damages, if any. No federal question emerges from this generalized, concise statement, whether plaintiff's title comes remotely or directly from the United States.

■ Finally, the Burats attempt to draw a parallel between their case and the recent Supreme Court decision in Oneida Indian Nation v. Oneida County, 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974) in which the Court found federal question jurisdiction over a land dispute between the Oneida Indians and the

State of New York. In anaylzing the case, the Burats contend that federal question jurisdiction rests on three controlling factors: (1) that the claimant have a possessory right which predated the United States acquisition of the land; (2) that there be an unconstitutional taking by the state; and (3) that there remains a continuing federal interest. In *Oneida*, these requirements were met by the Oneida Indians' aboriginal ownership of the land, the unconstitutional taking by the State of New York, in violation of the Nonintercourse Act, 1 Stat. 137, and the continuing treaty obligations of the United States to uphold and protect the Indians' lands. The Burats contend the fact situation at bar is parallel: (1) Hubert Burat owned the land during French and Spanish control of the territory which predated the United States acquisition through the Louisiana Purchase; (2) an agency of the State of Louisiana unconstitutionally expropriated the land, and (3) there is a continuing federal interest flowing from the Treaty of 1803, which recognized the rights of those settled in the territory, various statutes which outlined the procedure for perfecting title, and the fact that certain portions of the Burat tract remained in the public domain.

We find little guidance in the *Oneida* decision that helps the Burats. That case involved a federally protected right of an Indian tribe to possession of land. First, the Supreme Court focused on the facts that Indians were involved in *Oneida*, and much of the opinion was spent tracing the development of federal judicial treatment of Indian claims. The Court reiterated the proposition "that Indian title is a matter of federal law." 414 U.S. at 670. As Justice Rehnquist's concurring opinion points out, the case would have been quite possibly different had not the Indians' particular relationship with the United States been present.

Second, the unconstitutional taking in *Oneida* stemmed from the Indians' cession of reservation lands to the State of New York. This conveyance was forbidden without the consent of the United States under the Nonintercourse Act of 1790, 1 Stat. 137. In this case, however, it is alleged that the Levee Board unconstitutionally took land that was in the public domain and under congressional control. The Burats do not have standing to contest the expropriation of United States owned land, nor do they have standing to contest the taking of privately owned land from other owners. Their claim to the land must rise or fall on their own title.

Third, the treaty protection given Burat was not equivalent to that given the Oneida Indians. The Indian treaties guaranteed to the *tribe* a right of occupancy, a present and continuing right to possession which could not be divested except by the United States. The Treaty of 1803 made no such guarantees to the Burats. In Chouteau v. Eckhart, 43 U.S. (2 How.) 344, 11 L.Ed. 293 (1844), the Supreme Court interpreted the governmental obligations flowing from the Treaty of 1803:

> inchoate claims . . . were not changed in their character, by the treaty by which Louisiana was acquired; that the treaty imposed on this government only a political obligation to perfect them; that this obligation, sacred as it may be, in any instance, cannot be enforced by any action of the judicial tribunals; and that the legislation of Congress, from 1804, to the present time, has proceeded upon this construction of the treaty, as is manifested by the modes adopted to investigate the claims through boards of commissioners, and then acting on them by legislation.

43 U.S. at 358–359. The treaty recognized that the inhabitants had certain property rights. The subsequent statutes merely enabled the inhabitants to perfect those rights. There was no guarantee of possession as in the Indian treaties.

The plaintiffs have failed to point out and we are unable to find any substantial federal issues, the determination of

which would be decisive of plaintiffs' claim.

A suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction or effect of such a law, upon the determination of which the result depends. This is especially so of a suit involving rights to land acquired under a law of the United States.

Shulthis v. McDougal, 225 U.S. 561, 569, 32 S.Ct. 704, 706, 56 L.Ed. 1205 (1911). We hold that the heirs of Burat have not presented a federal question under 28 U.S.C.A. § 1331.

Affirmed.