Paul D. DRAWHORN, Jeanatte Mazzu, Robert C. Barr and Barbara S. Barr, on behalf of themselves and all others similarly situated, Plaintiffs

v.

QWEST COMMUNICATIONS INTERNATIONAL, INC., Qwest Communications Corporation, Qwest Transmission Inc., Qwest USLD Communications Corporation, Qwest USLD Communications, Inc. and Qwest Network Construction Services Defendants

No. CIV. A. 1:99–CV–415.

United States District Court, E.D. Texas, Beaumont Division.

May 30, 2000.

George Michael Jamail, Wayne Reaud, Reaud Law Firm, Gilbert I. Low, Orgain Bell & Tucker, Beaumont, TX, Nels J. Ackerson, the Ackerson Group, Washington, DC, John B. Massopust, Zelle Hofmann Voelbel & Gette, Minneapolis, MN, for Plaintiff.

David W. Ledyard, Theodore P. Ray, Strong Pipkin Nelson & Bissell, Beaumont, Jerry L. Beane, William Laurie Fouche', Jr., Strasburger & Price, Dallas, for Defendant.

### MEMORANDUM OPINION

COBB, District Judge.

Before the court is Paul D. Drawhorn's, Jeanatte Mazzu's, Robert C. Barr's and Barbara S. Barr's, as well as all others similarly situated (collectively referred to as the "Plaintiffs") Motion to Remand. The court, after reviewing the Motion, the responses in opposition, the pleadings of record, and hearing the arguments of the parties is of the opinion that this Motion should be DENIED.

## I. FACTS AND PROCEEDINGS

The plaintiffs in this case are owners of two tracts of land in Texas and Colorado, and seek to be class representatives of owners of land throughout the United States whose property is or was subject to easements by railroads, pipelines, energy or other utility companies. The plaintiffs allege that the defendants have installed or maintained fiber optic cable on the land owned by the plaintiffs. The plaintiffs further allege that the defendants have main-

tained these cables on their property without obtaining the consent of the plaintiffs and without just compensation.

The defendants are the operators of a nationwide network of fiber optic cables that are used for the high-speed transmission of telephone messages and other electronic data. Pursuant to agreements with railroad companies made in 1991, the defendants have been authorized to construct and operate their fiber optic cables on railroad and utility rights of way located throughout the country.

The plaintiffs have alleged that the easements owned by the railroads and utilities did not include the right to permit the defendants to install fiber optic networks. Accordingly, the plaintiffs have brought actions for trespass, unjust enrichment, slander of title, and declaratory relief.

This case was originally filed as a nationwide class action in the District Court of Jefferson County, Texas, 172nd Judicial District on May 13, 1999. On July 6, 1999, pursuant to 28 U.S.C. § 1441 [1] the defendants timely removed this case to the United States District Court for the Eastern District of Texas, Beaumont Division. The defendants contend that removal is proper under 28 U.S.C. § 1441(a) which provides that removal is proper for all civil actions filed in state court for which the district courts of the United States have original jurisdiction. Furthermore, the defendants base removal on 28 U.S.C. § 1441(c) which provides that an entire case shall be removed when a separate and independent claim, which is removable, is joined with one or more otherwise non-removable claims. The defendants contend that this court has original jurisdiction over this cause of action by reason of 28 U.S.C. § 1331—federal question jurisdiction. Section 1331 provides that the federal district courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." It is the defendants' position that since they acquired their rights in and over plaintiffs' lands from the railroad companies this case necessarily involves a federal question. The defendants argue that the railroads acquired their rights from federal statutes such as the Pacific Railroad Act and the Federal Right of Way Act of 1875 and from various other federal land grants and patents. According to the defendants, the construction of these federal statutes will be an essential issue in each of the causes of action. Hence, the plaintiffs' claims arise under the laws of the United States within the meaning of 28 U.S.C. § 1331 and this court

---

1. 28 U.S.C. § 1441 provides:

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

(c) Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

(d) Any civil action brought in a State court against a foreign state as defined in section 1603(a) of this title may be removed by the foreign state to the district court of the United States for the district and division embracing the place where such action is pending. Upon removal the action shall be tried by the court without jury. Where removal is based upon this subsection, the time limitations of section 1446(b) of this chapter may be enlarged at any time for cause shown.

has original jurisdiction pursuant to 28 U.S.C. § 1441.

Plaintiffs, on the other hand, contend that any federal issues raised in this case will be the result of a defense thus precluding federal question jurisdiction under the longstanding principle that federal defenses do not give rise to federal jurisdiction. *See, e.g., Rivet v. Regions Bank of Louisiana,* 522 U.S. 470, 471, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998); *Wichita Falls Indep. Sch. Dist.,* 44 F.3d 362, 365 (5th Cir.1995). The plaintiffs own petition asserts that the railroads did not have the ability to grant Qwest the right to install fiber optic cable systems.[2] Thus, the issue for the court to decide is whether the interpretation of federal railroad statutes, which Qwest relies on to assert proper ownership of the easements, is either a federal defense or a necessary and substantial part of the plaintiffs' well-pleaded complaint.

## II. DISCUSSION

### A. General Principles

The Constitution gives federal courts the power to hear cases "arising under" the Constitution, laws, and treaties of the United States. U.S. Const. art. III, § 2, cl. 1. It must be noted, however, that federal courts do not automatically have this power. In fact, it was not until 1875 that Congress gave federal courts general federal question jurisdiction. Act of Mar. 3, 1875, ch. 137, § 1, 18 Stat. 470.[3] From 1875 to the present, there has not been a clear definition of what is and what is not a federal question.[4] The Supreme Court has recognized that the "statutory phrase 'arising under the Constitution, laws, or treaties of the United States' has resisted all attempts to frame a single, precise definition for determining which cases fall within, and which cases fall outside, the original jurisdiction of the district courts....[T]he phrase 'arising under' masks a welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system." *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 6, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

Even though there is not a set standard for determining whether a claim

---

**2.** The petition states in pertinent part:

"Qwest knew or should have known that [the railroads' grant of fiber optic cable rights] were wholly ineffective because the [railroads] had no legal interest in some or all of the right of way land that it could transfer to Qwest for fiber optic or other telecommunications cable purposes." Plaintiffs' Nationwide Class Action Petition at ¶ 18(i).

Qwest entered into "agreements with other entities which had no rights, to negotiate access to and the use of Class members' land for the installation and construction of Qwest's network. Instead, Qwest or its agents entered into agreements with right of way users for the purported, but wrongful access to the right of way land." *Id.* at ¶ 26.

"By contract and law railroad rights of way are limited, at the time of acquisition and today, exclusively to railroad purposes....Because the railroad rights of way are limited exclusively to railroad purposes, the railroad companies that held or hold the railroad rights of way have never held, and cannot lease, license, convey, or otherwise transfer or create any rights in, under, over or across railroad right of way land for purposes other than railroad purposes. The construction of Qwest's network is not such a purpose." *Id.* at ¶¶ 30–31.

"Qwest knew or should have known that the railroad companies ... that held merely a right of way easement for limited purposes could not grant Qwest the right to install, maintain, or operate fiber optic cable..." *Id.* at ¶ 35.

"Qwest has not obtained a valid easement, license, or legal occupancy permitting Defendant to install or operate fiber optic cable through the land of the members of the class, nor has it obtained any other valid right in the land of the members of the class, whether pursuant to the aforesaid agreements with [the railroads] or otherwise." *Id.* at ¶ 38.

**3.** The current version can be found at 28 U.S.C. § 1331.

**4.** *See* Currie, *The Federal Courts and the American Law Institute* (Part II), 36 U. CHI. L. REV. 268 (1969) ("One difficulty with federal question jurisdiction is that nobody knows how to define it.").

involves a federal question, there are some guiding principles which aid courts in their evaluations of claims. For instance, in removal cases the defendant bears the burden of establishing federal jurisdiction over the state-court suit. *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir.1995) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921)). Furthermore, because federal courts are courts of limited jurisdiction the removal statute is subject to strict construction. *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 810, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) (recognizing that removal "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system"); *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir.1988). Moreover, doubts about the propriety of removal must be resolved in favor of remand. *Dardeau v. West Orange–Grove Consol. Indep. Sch. Dist.*, 43 F.Supp.2d 722, 730 (E.D.Tex.1999). Keeping these general principles in mind, the first step in a removal case is examining the plaintiffs' complaint.

### B. Federal Jurisdiction Exists if the Plaintiffs' Well–Pleaded State Law Claims Contain a Substantial Federal Issue.

It is a well settled principle that the plaintiff is the master of her complaint. *Healy v. Sea Gull Specialty Co.*, 237 U.S. 479, 480, 35 S.Ct. 658, 59 L.Ed. 1056 (1915) ("the plaintiff is the absolute master of what jurisdiction he will appeal to"); *Carpenter*, 44 F.3d at 365 (5th Cir.1995). Thus, plaintiffs may choose to pursue state law causes of actions only even though a federal claim may also be available. *Merrell Dow*, 478 U.S. at 809, 106 S.Ct. 3229 ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced."). Whether a case presents a federal question is determined by the "well-pleaded complaint" rule. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). The "well-pleaded complaint" rule was articulated by the Supreme Court in *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). Essentially, the "well-pleaded complaint" rule requires that a federal question appear on the face of the plaintiffs' complaint in order for a party to invoke federal question jurisdiction. *See id.* at 152, 29 S.Ct. 42. The "well-pleaded complaint" rule prevents defendants from removing cases to federal court based on a federal defense or counterclaim. *Gully*, 299 U.S. at 113, 57 S.Ct. 96; *Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 58 L.Ed. 1218 (1914) (recognizing that the federal issue must exist on the face of plaintiff's complaint "unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose"); *Oliver v. Trunkline Gas Co.*, 796 F.2d 86, 88 n. 1 (5th Cir.1986). Consequently, to support removal in this case, Qwest must "locate the basis of federal jurisdiction in those allegations necessary to support the plaintiff's claim, ignoring his own pleadings and petition for removal." *Carpenter*, 44 F.3d at 366 (5th Cir.1995).

In this case, plaintiffs' complaint on its face is based on state law. The plaintiffs's complaint brings state law causes of actions in trespass, unjust enrichment, slander of title, and declaratory relief. Nevertheless, this court's inquiry is not at an end because the Fifth Circuit has held that district courts "should inspect the complaint carefully to determine whether a federal claim is necessarily presented, even if the plaintiff has couched his pleading exclusively in terms of state law. The reviewing court looks to the substance of the complaint, not the labels used in it." *In re Carter*, 618 F.2d 1093, 1101 (5th Cir.1980). This process of looking beyond the face of plaintiff's complaints to determine whether a federal question has been raised is called the "artful pleading" doc-

trine. *Eitmann v. New Orleans Public Service, Inc.*, 730 F.2d 359 (5th Cir.1984) (holding that "artful pleading" cannot circumvent federal question jurisdiction). The artful pleading doctrine is an exception to the "well-pleaded complaint" rule and it applies when a state law claim involves a substantial federal issue.[5] As the Fifth Circuit has explained, the artful pleading doctrine "does not convert legitimate state claims into federal ones, but rather reveals the suit's necessary federal character." *Carpenter*, 44 F.3d at 367 (citation omitted).

The Supreme Court first recognized this form of the artful pleading doctrine in *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921). In *Smith*, a shareholder of a corporation sued in federal district court to enjoin the corporation from investing in certain bonds on the ground that they had been issued under an unconstitutional federal statute. *Id.* at 195, 41 S.Ct. 243.

Although the claim was created by state law, the Court held that the cause of action still "arose under" federal law. *Id.* at 199, 41 S.Ct. 243. The Court explained that where it appears from the complaint that the right to relief depends on the *construction of federal law* the federal district courts have jurisdiction. *Id.*[6] Here, Qwest contends that one or more of the plaintiffs' state law claims turn on issues of federal law, presenting a "*Smith*-type" case. The court agrees.

## C. Federal Question Jurisdiction Extends to State Law Claims Involving Substantial Federal Issues.

Relying on cases like *Smith*, numerous federal courts have pierced through state law complaints to determine whether the causes of action plead involved substantial federal issues. *See, e.g., U.S. Valves Inc. v. Dray*, 190 F.3d 811 (7th Cir.1999) (finding that a state law action for breach of

---

**5.** There are three separate categories of cases in which federal courts may deviate from the well-pleaded complaint rule. All three of these categories fall under the "artful pleading" doctrine. The first category of cases are the substantial-federal-question cases discussed in this opinion. The second category are the complete preemption cases. *See Avco v. Aero Lodge No. 735, Int'l Assn. of Machinists*, 390 U.S. 557, 559, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (recognizing that the plaintiff's claim can be so completely preempted by federal law that a federal question is necessarily raised). In this case, Qwest has not argued that there is a complete preemption of plaintiffs' state law claims. Nor can they, because as plaintiff recognized in its brief supporting remand, complete preemption has only been found in three distinct areas: LMRA, ERISA, and Indian land grant rights. *See* 13 CHARLES A. WRIGHT & ARTHUR R. MILLER, *Federal Practice and Procedure* § 3522 (2d ed.1984 and 1999 supp.), *see also Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 67, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (recognizing that federal question jurisdiction exists when Congress has clearly manifested an intent to make certain actions removable); *Hart v. Bayer Corp.*, 199 F.3d 239, 243–45 (5th Cir.2000) (same). The last category of cases under the heading of artful pleading are federal claim preclusion cases. *See generally* Arthur R. Miller, *Artful Pleading: A Doctrine in*

*Search of Definition*, 76 TEX. L. REV. 1781 (1998) (discussing the three categories of cases in detail).

**6.** The Supreme Court has narrowed *Smith* by holding that the mere incorporation of a federal standard into a state common law cause of action does not give rise to federal question jurisdiction. *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986); *Moore v. Chesapeake & Ohio R. Co.*, 291 U.S. 205, 54 S.Ct. 402, 78 L.Ed. 755 (1934); *see also M. Nahas & Co. v. First Nat'l Bank*, 930 F.2d 608 (8th Cir.1991) (holding that there is no substantial federal question exception to the well-pleaded complaint rule in the removal context). In *Merrell Dow*, the Supreme Court reasoned that there is no federal question under the "well-pleaded complaint" rule when Congress declined to create a private right of action based on a violation of that federal standard when it enacted the underlying statute. *Id.* at 817, 106 S.Ct. 3229. In this case, the defendants have not contended that there are any private rights of action under the various statutes which allegedly give the defendants rights in the plaintiffs' land. Instead, the defendants have argued that the state law claims all involve substantial federal issues. Thus, the reasoning that applied in *Merrell Dow* is not applicable here.

contract necessarily involved federal patent law); *Scherbatskoy v. Halliburton Co.*, 125 F.3d 288, 291 (5th Cir.1997) (holding that patent law was involved in a claim for royalties); *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 986 F.2d 476 (Fed.Cir.1993) (finding that a claim for business disparagement under Texas law involved a substantial federal issue); *Robbins v. Reagan*, 780 F.2d 37, 43 (D.C.Cir. 1985) (finding federal question jurisdiction because the Administrative Procedure Act was involved); *Grynberg Prod. Corp. v. British Gas, p.l.c.*, 817 F.Supp. 1338 (E.D.Tex.1993) (holding that under the well-pleaded complaint rule, a party's request for specific performance, injunction and conversion claims raised substantial issues of federal law).[7]

The defendants here maintain that each one of the plaintiffs' claims will turn on the interpretation of various federal railway rights of way statutes. *See, e.g.*, 43 U.S.C. § 934–39(originally Act of March 3, 1875) [Right of way act]; Act of July 1, 1862, ch. 120, 12 Stat. 489 [Pacific Railroad Act] (stating that "[t]he whole line of said railroad and branches and telegraph shall be operated and used for *all purposes of communication*, travel and transportation so far as the public and government are concerned") (emphasis added); *see also* Act of July 2, 1864, ch. 216, sec. 15, 13 Stat. 362 (stating the same). The Supreme Court explained the standard to be applied in cases such as this in *Shulthis v. McDougal*, 225 U.S. 561, 569–70, 32 S.Ct. 704, 56 L.Ed. 1205 (1912) stating that:

A suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, *for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction or effect of such a law, upon the determination of which the result depends.* This is especially so of a suit involving rights to land acquired under a law of the United States. If it were not, every suit to establish title to land in the central and western States would so arise, as all titles in those States are traceable back to those laws.

*Id.* (emphasis added); *see also Shoshone Mining Co. v. Rutter*, 177 U.S. 505, 507, 20 S.Ct. 726, 44 L.Ed. 864 (1900) (holding that not all suits involving federal law are federal question jurisdiction cases because if they were "every action to establish title to real estate (at least in the newer states) would be such a one, as all titles in those states come from the United States by virtue of its laws"). Thus, the court must look at each of the elements involved in plaintiffs' causes of action to determine whether substantial issues of federal law are necessary to determine the outcome of those claims. *Shulthis*, 225 U.S. at 569–70, 32 S.Ct. 704.[8]

1. **Plaintiff's Request for a Declaratory Judgment Involves Substantial Issues of Federal Law.**

 ▆▆ Plaintiffs asked for declaratory relief in their complaint. Specifically, the plaintiffs requested that the "Court de-

---

**7.** The court is aware of the fact that many of these cases deal with the patent jurisdictional statute, 28 U.S.C. § 1338(a), and not the general federal question jurisdiction statute, 28 U.S.C. § 1331. However, the court is of the opinion that the analysis applied in those cases is relevant to the determination here.

**8.** In *Bell v. Hood*, 327 U.S. 678, 683, 66 S.Ct. 773, 90 L.Ed. 939 (1946), the Supreme Court described the substantiality requirement in original jurisdiction cases as a three-tier inquiry. The first inquiry is whether the claim is wholly insubstantial and frivolous. If so,

dismissal for lack of appropriate jurisdiction is appropriate. If not, a court should move on to consider whether the action should be dismissed for failure to state a claim upon which relief can be granted because of nonjurisdictional defects. The third level comes into play if the allegations of the complaint are deemed sufficient to state a claim and further proceedings are warranted. In this case, only the first level would be applicable and as will be explained later the claim by the defendants that federal issues will be involved is not frivolous.

clare that Qwest has no legal rights to exercise dominion and control over the right of way land or any other interest in the right of way land." Plaintiffs' Nationwide Class Action Petition at ¶ 58. In a part of plaintiffs' petition labeled "Facts Applicable to All Counts," the plaintiffs asserted that Qwest did not have a valid easement permitting them to install fiber optic cable over the plaintiffs' land. *Id.* at ¶ 18(i), 26, 30, 31, 35 and 38. In order to prove this, Qwest's rights will have to be determined. This undoubtedly puts the interpretation of the federal railroad statutes at issue since Qwest takes whatever rights the railroads had under Qwest's 1991 agreement to use the railroads' rights of way.[9]

The chain of title that these plaintiffs will have to disprove in order to recover is two-fold. The first link is between the United States of America and the Railroads—due to the railroad statutes granting railroad companies rights of way over public lands. The second link is between the railroads and Qwest. To declare the rights of all the parties in this suit there is no way around the fact that a court is going to have to interpret the various federal railroad statutes and that this is going to be a necessary and substantial part of the suit. Plaintiffs cannot walk into court and ask to have their rights declared without the court interpreting the federal statutes since the railroads' rights derive from these statutes. This is not a matter of defense since plaintiffs must prove their chain of title does not contain an easement to Qwest, which allegedly comes from the railroads, in order to succeed under their action for declaratory judgment. Therefore, the rights of all the parties is a necessary and substantial part of the action for declaratory judgment.[10]

## 2. Plaintiffs' Well–Pleaded Claim for Unjust Enrichment Involves a Substantial Issue of Federal Law.

Under Texas law, a cause of action for unjust enrichment requires the plaintiffs to allege and prove that the defendants have obtained a benefit from another by fraud, duress, or taking an undue advantage. *Texas Carpenters Health Benefit Fund v. Philip Morris, Inc.*, 21 F.Supp.2d 664, 678 (E.D.Tex.1998) (applying Texas law) *aff'd* 199 F.3d 788 (5th Cir.2000); *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex.1992). Furthermore, "[i]t is fundamental that for a person to be entitled to restitution, he must show not only that there was unjust enrichment, but also that the person

**9.** "[I]t is now quite settled that federal jurisdiction exists also of a suit for a declaratory judgment that the other party does not have a right under federal law he is claiming. The federal nature of the claim appears on the face of the complaint for a declaratory judgment and the historical test is thought satisfied since the precise issue could have been litigated in a coercive action in federal court by the party claiming the federal right, and only the parties have been transposed." 13B WRIGHT, MILLER & COOPER, *Federal Practice and Procedure: Jurisdiction* § 3566 at 93–94 (2d ed.1984 and 1999 supp.); *see also Franchise Tax Board*, 463 U.S. at 19, 103 S.Ct. 2841 (noting that "[f]ederal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendants brought a coercive action to enforce its rights, that suit would necessarily present a federal question"). The cases cited by Wright deal with the situation where a plaintiff seeks to establish federal jurisdiction by asking for a declaration of their rights under a federal statute. This is not what is before the court. However, the same general principle is logically equally applicable to the situation before me. The plaintiffs rights cannot be fully declared without interpreting the federal statute. This is so because plaintiffs' lands are unquestionably subject to the railroad easements. A substantial federal issue is thus involved since a court will have to interpret the railroad statutes in order to determine whether the railroads are permitted to grant their easements under those statutes to the fiber optic cable companies.

**10.** Because the court has concluded that at least 3 of the causes of action involve substantial federal questions, it is not necessary to analyze whether the claim for trespass does. At the very least, that claim is subject to this court's supplemental jurisdiction.

sought to be charged had *wrongfully se-cured a benefit* or had passively received one which it would be unconscionable for him to retain." *Barrett v. Ferrell*, 550 S.W.2d 138, 143 (Tex.Civ.App.—Tyler, writ ref'd n.r.e.) (emphasis added) (citing 66 Am.Jur.2d Restitution and Implied Contracts, sec. 4, p. 947 (1973)).

 In order to succeed on their claim for unjust enrichment, the plaintiffs must demonstrate that Qwest has "wrongfully secured a benefit" by installing its fiber optic cables on the easements it has acquired from the railroad companies. The easements at issue in the case *sub judice* were given to the railroad companies by federal statutes. *See, e.g.*, 43 U.S.C. § 943, Pacific Railroad Act, Act of July 1, 1862, ch. 120, 12 Stat. 489, Act of June 8, 1872, 17 Stat. 339. Therefore, the issue of whether the railroads could assign their easements to the fiber optic cable companies without violating the putative class members' rights will be governed by interpreting these same federal statutes. *See id.* Since the issue of federal law arises in the elements of plaintiffs' cause of action, removal is proper.

Plaintiffs' counsel has contended that any federal issues that arise in this case are the result of a defense. However, this analysis ignores the fact that in order for the plaintiffs' to succeed on any one of their claims they must establish that the federal railroad statutes did not grant the railroads the right to assign their easements to Qwest.[11] For the claim of unjust enrichment, the plaintiffs must prove by a preponderance of the evidence that Qwest has "wrongfully secured a benefit" to which it was not entitled. In order to do this, plaintiffs must prove that the railroads were not allowed to assign their easements to Qwest under the federal railroad statutes. Thus, it is apparent that federal law is a necessary and substantial part of this suit.

### 3. Plaintiffs' Claim for Slander of Title Involves a Substantial Issue of Federal Law.

 Similarly, the plaintiffs' claim for slander of title also involves a substantial issue of federal law. Slander of title is defined under Texas law as a false and malicious statement made in disparagement of a person's title to property which causes him special damage. *Hill v. Heritage Resources, Inc.*, 964 S.W.2d 89, 109–10 (Tex.App.—El Paso 1997, writ denied) (citing *Hauglum v. Durst*, 769 S.W.2d 646, 653 (Tex.App.—Corpus Christi 1989, no writ)). The elements of slander of title are: (1) the uttering and publishing of the disparaging words; (2) that they were false; (3) that they were malicious; (4) that the plaintiff sustained special damages thereby; and (5) that the plaintiff possessed an estate or interest in the property disparaged. *Id.*

 Accordingly, to prevail on their case for slander of title, the plaintiffs are required to allege and prove that the defendants' assertion that it has the right to install its fiber optic cable in the railroads' right of way was false. The federal issue of whether the railroads could give the defendants the right to install a fiber optic cable thus arises as a necessary part of plaintiffs' claim for slander of title. *See Additive Controls*, 986 F.2d at 478 (the federal circuit held that a claim for business disparagement under Texas law required a showing that the disparaging statement was false. The court held that in order to prove that the disparaging statements were false, the plaintiff would have to prove the patent was invalid. This required resolving a substantial federal issue). This is so, because in order for the plaintiffs to succeed on their claim for Slander of Title they must prove that Qwest is *falsely* contending that it has

---

11. At hearing on this motion, Plaintiffs' counsel continuously evaded the question of whether or not a court would be required to

interpret federal statutes in order to decide this case. *See* Trans. at 28–29.

legitimate rights in the easements at issue. It cannot be determined that Qwest's contentions are false without interpreting the federal railway statutes. Thus, the federal issues are a substantial and absolutely necessary part of the plaintiffs' claims of Slander of Title.

### D. The Federal Issues in a State Law Cause of Action must be Essential Elements of the "Well–Pleaded Complaint" and Not a Defense.

As mentioned earlier, the mere presence of a federal issue in this lawsuit is, by itself, insufficient to confer jurisdiction. *Shoshone Mining Co. v. Rutter,* 177 U.S. 505, 20 S.Ct. 726, 44 L.Ed. 864 (1900) (recognizing that a contrary rule would mean that all land cases in most states would involve federal jurisdiction since all titles in most states derive from the United States). Federal jurisdiction only exists for a *Smith*-type case when a federal issue exists on the face of the plaintiff's complaint, "unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose." *Taylor v. Anderson,* 234 U.S. 74, 75–76, 34 S.Ct. 724, 58 L.Ed. 1218 (1914). When a *Smith*-type federal question case is analyzed in conjunction with the well-pleaded complaint rule, "federal question jurisdiction is unavailable *unless it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims....* " *Franchise Tax Bd.,* 463 U.S. at 13, 103 S.Ct. 2841 (emphasis added).

The plaintiffs have repeatedly characterized the federal issues involved in this suit as defenses. The court does not see them as so. First of all, the interpretation of the federal statutes, as detailed above, is a necessary and substantial part of the plain-

tiffs' own causes of action. Second, the federal issues involved in this case are not similar to other claims which have been found to be defenses.

For instance, in *Oklahoma Tax Comm'n v. Graham,* 489 U.S. 838, 109 S.Ct. 1519, 103 L.Ed.2d 924 (1989), the Supreme Court held that the existence of a tribal immunity defense did not convert a state law tax claim into a federal question. *Id.* at 841, 109 S.Ct. 1519. Unlike that case, the federal issues here are part of the elements of the state law claims and are not a separate defense asserted by the defendants. *See infra.* It is undeniable that the interpretation of the railroad statutes that the defendants will undoubtedly pursue [12] will be useful in defending this lawsuit. That fact alone does not make them issues purely of defense any more than it made the proving the constitutionality of the statute in *Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921), an issue purely of defense.

As set out earlier in this opinion, in *Smith* a shareholder sought to enjoin the corporation from investing pursuant to a statute the shareholder claimed was unconstitutional. Establishing the constitutionality of the statute was a defense in the sense that it defeated the plaintiff's case in chief. Nevertheless, at the same time, alleging the wrongfulness of the defendant's conduct was an essential element of the plaintiff's case as well. The plaintiff demonstrated wrongfulness by alleging the unconstitutionality of the federal statute upon which the defendant relied. Here, similarly, the plaintiffs allege that Qwest's intrusion unto their lands is unlawful. In order to prove this, federal statutes *must be* interpreted. The interpretation of these statutes is not an incidental part of

---

**12.** The defendants will surely assert that the railroad statutes dealt with telegraph lines and other "communications" thus meaning that Congress intended the railroad companies to be able to grant their easements to fiber optic cable companies. *See, e.g., Mellon v. Southern Pac. Transp. Co.,* 750 F.Supp. 226 (W.D.Tex.1990) (where the court held that under federal law a railroad had the power to allow the installation of fiber optic cable in its right of way); *but see State of Louisiana v. Sprint Communications Co.,* 892 F.Supp. 145 (M.D.La.1995) (disagreeing with the *Mellon* court).

the plaintiffs' cause of action since the plaintiffs' are seeking to certify a nation-wide class. The court takes judicial notice that many of the lands west of the 100th parallel are subject to these railroad easements.[13] Thus, the federal issue involved in this case is substantial.

The plaintiffs cite *Burat's Heirs v. Board of Levee Comm'rs.*, 496 F.2d 1336 (5th Cir.1974) and the cases cited within that decision in support of remand. In *Burat*, the plaintiffs were a class of 500 descendants of an early settler of a large tract of land in southern Louisiana. *Id.* at 1337. The plaintiffs sought federal jurisdiction on the basis that their ancestor owned land based on a federal land patent granted by Congress. *Id.* The plaintiffs brought suit against various defendants alleging that the defendants were occupying land rightfully owned by plaintiffs. The titles sought in that case was fee simple absolute. Here, the title was originally burdened with a right of way for railroads and "communications" easements. The *Burat* plaintiffs asserted that federal question existed because the court would be required to decide between two competing federal land grants (their own and one to the other individuals possessing the same land). *Id.* at 1339. The Fifth Circuit noted that there are three principles which guided the outcome of that case:

first, questions as to the title and rights to land within a state are of primary concern to that state and are not the customary business of federal courts; second, the fact that title derives from an Act of Congress or a United States patent does not raise a federal jurisdictional question; and third, federal juris-

diction must appear from those allegations necessary to state plaintiffs' own claim and cannot rest upon the assertion that the defense raises or will raise a federal question.

*Id.* at 1338.

After noting these principles, the Fifth Circuit held that there was no federal question jurisdiction because there were not any "substantial federal issues, the determination of which would be decisive of plaintiffs' claim." *Id.* at 1341–42.

*Burat* is entirely consistent with this court's determination that federal jurisdiction exists in the case *sub judice*. The *Burat* heirs claimed under a federal patent, but the case presented no real issue about the scope or validity of that patent. *Id.* at 1338, 1340. In *Burat*, there was nothing more than a federal patent that was the foundation of plaintiffs' title in fee simple. There was no dispute over the proper interpretation of that patent. In this case, the interpretation of the statutes granting the rights of way to the railroads represents a substantial dispute between the parties. *See* Plaintiffs' Pet. at ¶ 18(i), 19(e), 25, 26, 29–31, 35–38. Unlike the issues in *Burat*, the issues here are substantial and would be decisive of the plaintiffs' claims.[14]

Furthermore, in *Burat* the plaintiffs only had to plead their own title under the Louisiana petitory action. This is not so here. In order for the plaintiffs to prevail in this suit under their claims for unjust enrichment, slander of title, and declaratory judgment the plaintiffs must negate Qwest's claim of title. Thus, a federal issue is necessarily raised since the federal statutes must be interpreted to determine

---

**13.** The defendants have estimated that at least 40% of the lands at issue in this case could be subject to the various railroad statutes.

**14.** Supreme Court cases like *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *Shulthis v. McDougal*, 225 U.S. 561, 32 S.Ct. 704, 56 L.Ed. 1205 (1912); and *Shoshone Mining Co. v. Rutter*, 177 U.S. 505, 20 S.Ct. 726, 44 L.Ed. 864

(1900) also recognize the proposition that the mere fact that title derives from a United States patent does not create federal question jurisdiction. In this case, the title not only originally derives from the United States but the interpretation of the federal statute granting that patent will be a decisive issue to many of the claims involved in this suit.

whether Qwest has unlawfully intruded upon plaintiffs' lands.

The presence of the substantial federal issue in this case is similar to the one found in *Hidalgo County Water Control and Improvement Dist. v. Hedrick,* 226 F.2d 1 (5th Cir.1955). In that case, the municipal plaintiffs sued private landowner defendants to enjoin the latter's use of waters of the Rio Grande. *Id.* at 3. The plaintiffs had been diverting the waters for irrigation and other community uses and wanted to prevent the defendants from depleting the river's water source. At common law, the defendants, whose land was located adjacent to the Rio Grande, had priority of right over the municipal plaintiffs, whose land was not adjacent. The plaintiffs relied on a 1945 treaty between the United States and Mexico to establish that they had the right to use the river without interference from the defendants. *Id.* at 4. The Fifth Circuit held that it had original federal question jurisdiction over the action under 28 U.S.C. § 1331 because the determination of which party would prevail depended upon whether the treaty did indeed confer superior rights upon the municipal plaintiffs. *Id.* at 5–6.

Similarly, in this case, the resolution of plaintiffs' state law claims will turn on the interpretation of the federal railroad right of way statutes. Neither the plaintiffs' rights nor Qwest's rights in the land at issue here can be determined without interpreting the various federal railway statutes. From an early time, the Supreme Court has held that "a case . . . may truly be said to arise under the Constitution or a law of the United States, whenever its correct decision depends on the construction of either." *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 379, 5 L.Ed. 257 (1821); *see also Osborn v. Bank of the United States,* 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824). This analysis applies to the facts of this case. There is no way the plaintiffs' claims for declaratory relief, unjust enrichment or slander of title can succeed if a court determines the federal statutes allow the railroad companies to transfer their rights to Qwest without af-

fecting the plaintiffs' rights. As a result, the court finds there is federal subject matter jurisdiction over the plaintiffs' claims. The fact that plaintiffs artfully pleaded their case and did not specifically refer to any federal claim or law is irrelevant. *Eitmann v. New Orleans Public Service, Inc.,* 730 F.2d 359, 365 (5th Cir. 1984).

## III. CONCLUSION

In summary, removal is proper on the basis of federal question jurisdiction. The claims for unjust enrichment, slander of title, and declaratory judgment, even if well-pleaded, all raise substantial issues of federal law in otherwise state law causes of action. The fact that title at dispute in a suit originally derives from a United States patent does not mean that there is federal question jurisdiction. The federal issues must be a necessary and substantial part of the plaintiffs' "well-pleaded complaint" as they are here. The federal issues in this case are not defenses. Rather, they are decisive issues to many of the potential class members claims thus giving this court federal question jurisdiction.